LAND, J.
 

 The plaintiff has enjoined defendant drainage district from awarding to the McWilliams Dredging Company contracts Nos. 1, 2, and 3, and to L. A. Loustalout contract No. 4, in connection with certain work to be done in drainage district No. 1, in Tangipahoa parish, on the ground that plaintiff was the lowest bidder on said contracts, and that the bids of the dredging company and of Loustalout were altered and changed after the same had been submitted to said board, and were accepted by said hoard after all bids had been rejected and all deposit checks returned to the bidders, and without notice to plaintiff and other bidders. ;
 

 Plaintiff alleges:
 

 That contracts Nos. 1, 2, and 3 cover all work to be done in said drainage district, except the item of “clearing and cleaning,” which item for the entire district is embodied in contract No. 4.
 

 That Loustalout submitted a bid on contract No. 4 alone, and that said dredging company, in its bid on contract No. 1, added ■an item not required nor contemplated by the plans and specifications, to be included in said contract, but which was an item of contract No. 4, to wit, “220 acres of clearing at $220 per acre,” and that, furthermore, said dredging company likewise added an item to its bid on contract No. 2, not required or contemplated as an item therein by the plans and specifications, to wit, “the excavation of laterals to the main channels at 25 cents per cubic yard.” ,
 

 It is alleged by plaintiff that the inclusion by said dredging company of these items in' its bids for contracts Nos. 1 and 2 was not a mere informality that could be waived, by eliminating such items from the bids, but had the effect of disqualifying its bid on each of these contracts.
 

 Plaintiff alleges that the law requires that the work to be done should be let by defendant drainage board to the lowest possible
 
 *363
 
 bidder or be readvertised, that the bids of said dredging company with items eliminated after submission to said drainage board became in effect new bids, and that théir consideration and acceptance, after the rejection of all bids and return of deposit checks, was contrary to law, arbitrary, and an abuse of discretion by said drainage board, to the damage of. plaintiff'. Plaintiff prays for judgment decreeing that the awarding of the works advertised to be .done to the successful bidders to be contrary to law and null and void, and decreeing any contract entered into in pursuance of the award as likewise invalid, null, and void, and that defendant drainage district be perpetually enjoined from executing any contract under said award.
 

 Plaintiff further prays that said drainage district be required to accept his bid as the lowest bid, or to reject all bids and readvertise the whole work according to law.
 

 ■ George W. Benson, and other electors and taxpayers residing in drainage district No. 1' of Tangipahoa parish, intervened in the suit, and united with plaintiff in his demands, ■upon similar grounds, and seek the same relief.
 

 Defendant dredging company and Loustalout filed exceptions of no cause of action, which were overruled.
 

 By the consent of all parties, the ease was tried upon the merits, and judgment was rendered by the court below, setting aside and annulling the award of the contract to the McWilliams Dtedging Company and to Loustalout by defendant drainage board, and enjoining said defendants and said board from signing or accepting any contract on said award, and ordering said drainage board to readvertise for new bids as the law directs. Loustalout and the McWilliams Dredging Company and defendant drainage board have appealed.
 

 1. We are of the opinion that the exception of no cause of action was properly overruled.
 

 This exception is predicated upon the proposition that as plaintiff is an unsuccessful bidder, and as all bids were rejected, he is without interest to attack the action of defendant drainage board in awarding the contract in this case.
 

 It is the established jurisprudence of this state that an unsuccessful bidder on a contract advertised by a public board to be let to the lowest bidder may sue to set aside the award. State ex rel. Bank v. Louisiana State Board of Agriculture, 122 La. 677, 48 So. 148; Bienvenu v. Police Jury, 126 La. 1103, 53. So. 362; State v. Police Jury, 142 La. 691, 77 So. 503.
 

 2. The case is clearly with the plaintiff on the merits. Section 2 of Act 249 provides that drainage and other public boards “shall meet at the time and place set and in open session shall receive, open and read all bids and shall then and there award said bids to the lowest possible bidder, provided they shall hqve the right to reject any and all'bids .and proposals and readvertise for same.” This section makes it the mandatory duty of a public board, at the time the bids are opened, “then and there to award said bid to the lowest possible bidder.”
 

 The only alternative that a public board has under the statute is to reject any and all bids and readvertise for same.
 

 Notwithstanding the right to reject, the bid must be awarded in competition to the lowest possible bidder, if awarded at all. Clearly an award made to a bidder, after all bids have been rejected and all' deposit checks have been returned, is illegal and wholly unauthorized by Act 249 of 1924. The plain intent and purpose of the statute is to secure fair and free competitive bidding on public contracts. To permit such action on the part of a public board would be to open the door to favoritism in the awarding of contracts affecting the public interest, the very evil which the statute was enacted to prevent.
 

 
 *365
 
 The mere fact that a public board has been requested by one or two bidders, as in the present case, to allow them to change their bids and to resubmit same, after all bids had been rejected, does not present any valid reason or legal excuse for the violation of the statute, which is peremptory in its requirement, and necessarily so, in 'order' to conserve the public interest in the matter of the proper letting of public contracts.
 

 The contracts awarded to the McWilliams Dredging Company have not been awarded upon the bids originally submitted to defendant drainage board, but upon the bids as subsequently changed and altered, after having been publicly opened and rejected.
 

 It is therefore an award not submitted to public competition, as required by the statute, but is in the nature of a new bid and a private contract between defendant drainage board and the successful bidder.
 

 Six bids were opened at the meeting of defendant drainage board on October 13, 1921. The’board then adjourned until October 15th, for the purpose of considering these bids. At this meeting, after considerable discussion, it was moved and seconded “that the board reject all bids, and that the construction work be readvertised as soon as possible.” This motion was carried unanimously, and the board adjourned.
 

 The board met again on October 23, 1924. The minutes of the meeting of October 15, 1924, were read and approved. After discussion, it was moved and seconded “that we readvertise at once for bids' for the construction work of Tangipahoa drainage district No. 1.”
 

 This motion was lost by a vote of 3 to 2. The meeting adjourned until October 24,1924.
 

 At this meeting, by a vote of 3 to 2, it was Moved and carried “that the commission invite Mr. McWilliams, of the McWilliams Dredging Company, to talk to them.” The meeting then adjourned to October 27, 1924, and a similar motion was 'then made and adopted that Mr. .Sternberg, of the' Sternberg Dredging Company, be allowed to address the board. The attorney for Mr. 'Sternberg notified the commission at this meeting that he would enjoin any attempt to let the contract to any other bidder. 'The meeting then adjourned to October 30,1924. At this meeting, a letter from L. A. Loustalout was read, advising the board that it would be agreeable “to have you reconsider my bid on contract 4,” also a letter from McWilliams Dredging Company was presented, petitioning the board to reconsider its action rejecting said company’s bid on contracts 1, 2, and 3. A report of the engineer of the board was álso produced, showing that McWilliams Dredging Company’s bid on contracts Nos. 1, 2, and 3, including Loustalout’s bid oh contract No. 4, was $18,705.08 lower than the Sternberg Company’s bid on all four of the contracts.
 

 The board then adjourned to November 22, 1924, A motion was then adopted, by a vote of 3 to 2, to reconsider “all of the said bids submitted at the meeting held on October 13, 1924, and that said bids be read by the secretary and spread upon the minutes of this meeting.” When the secretary of the board was instructed to read the bids, he refused, “claiming that he had no legal bids in his possession.” The bids were then read by the president of the board and spread upon the minutes. The board immediately passed a resolution, by a vote of 3 to 2, striking out, because withdrawn by McWilliams Dredging Company, “that portion of the bid covering contract No. 1 reading as follows:
 

 “Contract 4, No. 2, section 1, acres 220— $220,” as well as that portion of the bid submitted for contract No. 2, involving the item of laterals at 25 cents which reads “Item No. 1 cubic yards laterals 25 cents,
 
 and also all other informalities, should there he any.”
 
 (Italics ours.)
 

 Contracts 1, 2, and 3, as altered and
 
 *367
 
 changed, were then awarded to the McWilliams Dredging Company, and contract No. 4 to L. A. Loustalout, without - readvertisement, and without repeal of the resolution requiring readvertisement for bids, adopted October 15, 1924.
 

 The defendant board, in the public notice to bidders, reserved “the right to reject any and all bids and to waive any informality in the bids received.”
 

 It is patent that such right must be exercised by a public board at the time the bids are opened, or at least after notice to all the bidders, and before the rejection of all bids, in order that the question may be determined contradictorily whether any addition to a bid is in fact a harmless formality, or whether it is an attempt upon the part of the bidder by a subsequent withdrawal of same to gain some advantage, and thereby defeat competitive bidding.
 

 In contract No. 1, after bidding on the items in that contract, McWilliams Dredging Company included as an item therein the clearing and cleaning of 220 acres, of land at $220 per acre, or a bid of $48,400 for this particular item.
 

 The clearing and cleaning of this land was a matter embraced entirely within contract No. 4, and the bid of the dredging company included only a portion of the clearing and cleaning required by said contract.
 

 The “general specifications”- of the work to be done clearly state “that the whole work involved in the' district has been divided into four (4) contracts, and that contracts numbers 1, 2, and 3 cover all work referred to, with the exception of item No. 2 (clearing and cleaning) which item constitutes contract No. 4.”
 

 It is expressly provided in said specifications that “bids which do not cover all the work in any one contract will not be considered.”
 

 In the bid of McWilliams Dredging Company on contract No. 2, after bidding on the item of digging ditches, as required by the specifications, at 17% cents per cubic yard, under the head of item 1, excavation, said company added another item, not included in the specifications, “for lateral ditching” at 25 cents per cubic yard.
 

 As no lateral bids are called for, but all ditching is fixed at 17% cents per cubic yard, to have accepted such bid as to lateral ditching, an unknown quantity, would not only have changed.the specifications, but exposed the board to high charges on an uncertain quantity of work, when the purpose of the specifications was to fix the ditching charge at 17% cents for all ditching. The McWilliams bid on contract No. 1 could not be accepted, as it contained a proposal to do a part of the work of contract No. 4, and not the whole of it, as required by the specifications.
 

 These bids did not conform to the specifications, and evidently were made with the intent of being withdrawn, as the interest of the McWilliams Dredging Company might dictate, after other bids had been disclosed.
 

 It is well settled that “thfe basis of the bidding and the contract entered into should be the same, for otherwise the very object and purpose of the law in calling for competitive bidding might be thwarted. ‘To require the bids upon one basis and award the contract upon another wmuld, in practical effect, be an abandonment of all bids.’ ” Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20; Wickwire v. City of Elkhart, 144 Ind. 305, 43 N. E. 218; People v. Board of Improvement, 43 N. Y. 229; Shaw v. City of Trenton, 49 N. J. Law, 339, 12 A. 902.
 

 Under Act 249 of 1924, a public board cannot be permitted to reconsider bids after they have been once rejected. The only legal course to be pursued in such case is to read
 
 *369
 
 vertise for bids to be awarded in competition to the lowest possible bidder.
 

 3. Defendants, including defendant drainage board, have attacked the constitutionality of Act 240 of 1924 on the following grounds:
 

 “(a) That'the statute is in the nature of a penal statute, and the Legislature has failed to fix any standard of conduct, or define the course which is to be prohibited.
 

 “(b) That the title of the act is so broad and general that it is not indicative of the object of the act.
 

 “(c) That the act is discriminatory, in that it excludes from its provisions municipalities and port districts without any reason therefor.”
 

 The title of Act 249 of 1924 reads as follows :
 

 “An act providing for the proper letting of contracts for the purchase of materials or supplies or the performance of public works to be paid for out of the public funds by the police juries, and all public boards in any parish or municipality, school boards, road or drainage commissioners and other governing authorities in all the parishes or subdivisions thereof in the state of Louisiana, port districts and all municipalities excepted, and providing penalties for the violation thereof.”
 

 (1) The title plainly states the purpose or object of the act. Even “acts relative to crimes and misdemeanors” have been held by this court to sufficiently state the object in their titles, notwithstanding the broadness and generality of such titles. State v. Craig et al. (No. 27158) 158 La. 866, 104 So. 744.
 

 (2) Sections 1 and 2 of Act 249 of 1924 sufficiently define the course of conduct to be pursued by public boards, as far as a standard of civil conduct is concerned, in the discharge of advertising for bids and letting-public contracts.
 

 Section 1 makes it “unlawful” for any public board, port districts and all municipálities excepted, “to purchase any materials or supplies or let any contract except in cases of extreme emergencies for any public works when the same shall exceed! the sum of $250.-00, without first advertising for bids for not less than ten days in the official journal of the parish in which said governing authority is domiciled, the advertisement to describe the material or supplies to be purchased or the public work to be performed and set the time and place where the bids are to be received and opened.”
 

 Section 2 of said act declares that all public boards, including those in any parish or municipality, “shall meet at the time and place set and in open session shall receive, open and read all bids and shall then and there award said bids to the lowest possible bidder, provided they shall have the right to reject any and all bids and proposals and re-advertise for same.”
 

 Section 3 merely relates to the contract awarded, and provides that the successful bidder shall furnish good and sufficient bond and security for the faithful performance of said contract.
 

 The penal part of said act is separated from its other provisions, and is found in section 4, which provides:
 

 “That any purchase of materials or supplies or the letting of public works or the entering of any contract contrary to the provisions of this act shall be null and void and the members of the governing authorities violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction in the district court, shall be fined not less than $50.00 nor more than $500.00 or confined in the parish jail for not more than 30 days, or both at the discretion of the district judge.”
 

 The members of defendant drainage board are before us, not as defendants in any criminal prosecution, but as defendants in a civil suit. They are therefore, at this time, without interest in attacking the criminal features of said act.
 

 Suffice it to say that the criminal section of said act is readily separable from its other provisions, which would not be affected, even if section 4 should fall under the ban of unconstitutionality. The state unquestionably, in the exertion of her police power
 
 *371
 
 as to the regulation of the letting of public contracts to be paid out of public funds, may select her own political agencies for such purpose, and not be made amenable thereby to the charge of arbitrary, discriminatory action, merely because she may deem fit, as a matter of public policy, to exempt certain subdivisions of the state from the operation of a general law regulating such contracts. Were the law otherwise, the innumerable acts of the Legislature of this state, exempting the city of New Orleans from the operation of their provisions, would be all unconstitutional, null, and void, because of illegal discrimination.
 

 Judgment affirmed.