KLEES, Judge.
In January of 1975, the various Airlines operating at the New Orleans Airport brought suit against the City of New Orleans, Moon Landrieu (then mayor of New Orleans), the New Orleans Aviation Board, Paul Stoulig (Director of the New Orleans Aviation Board), and Host International (the concession lessee at the airport). The Airlines sought to enjoin the Aviation Board from carrying out an amendment of the terms of the Board’s July 1, 1970 lease agreement with Host.
Alternatively, the plaintiffs sought a declaratory judgment decreeing the above referenced amendment void on the grounds that it violated certain public bidding requirements. Plaintiffs further sought a declaratory judgment decreeing that in determining the yearly charges due by the Airlines to the Aviation Board under their lease with the City, credits should be given by the Board for the minimum rentals due by Host under the original 1970 lease.
*1043 The cause of action by the Airlines is based on the fact that they have a “residual cost lease” with the City of New Orleans. Under this type of lease, the Airport accumulates all of its costs — maintenance, operations, and debt service on bonded indebtedness — and applies the costs against Airport revenues from all sources, except the Airlines’ landing fees. The Airlines agree to pay the Airport any difference between the accumulated costs and its other revenues. The difference is made up by a periodic adjustment of the landing fees.
In essence, the Airlines’ “residual cost lease” guarantees that the Airport will never operate at a deficit. Obviously, under such a lease, the Airlines’ cost of operation is directly affected by any reduction of Airport revenues from other sources.
In return for this financial guarantee by the Airlines, the City of New Orleans contracted to manage the Airport “in a prudent and efficient manner as compared to costs and practices in effect at the most efficiently and prudently managed airports of substantially similar size and activity in the United States.”
The Airlines contended that the amendment of the original 1970 lease which reduced guaranteed revenues, violated the “prudent and efficient” management clause of the Airlines’ lease.
The case was assigned to a Commissioner who, after a hearing on the merits, recommended that the Airlines’ suit be dismissed. The trial judge accepted the recommendation of the Commissioner and rendered judgment against the Airlines. It is from that judgment that the Airlines now appeal.
FACTS
The New Orleans International Airport is owned by the City of New Orleans. The City operates the Airport through the Aviation Board, in accordance with the Home Rule Charter and the New Orleans City Code.
In February of 1970, the New Orleans Aviation Board issued invitations for bids to operate the concessions at the Airport. Originally, the invitations did not include any forecasts about the probable growth at the Airport or trends in passenger traffic through the Airport. Subsequently, at the request of a bidder, the Board submitted to all prospective bidders certain studies which projected the departing passenger traffic at the airport for the years to be covered by the concession agreement.
The instructions to bidders called for minimum, annual guaranteed rentals for each year of the proposed ten-year lease, and the Aviation Board set bottom limits for the first four years of the lease. In March, 1970, Host International, Inc. submitted a bid for the ten-year period which totalled $11,065,800. Dobbs House submitted the next highest bid which totalled $10,800,000. Since the Host bid was the highest, it was ultimately accepted by the Board. The City Council of New Orleans approved the acceptance, and a Lease Contract and Concession agreement was executed between the City of New Orleans and Host International on July 1, 1970. This agreement set forth the minimum annual rental guarantees to be paid by Host.
In 1973, Host asked the Aviation Board to make certain amendments To the lease. The request was based on the fact that the actual number of passengers departing from the airport differed significantly from the projected number of departing passengers as indicated in the studies supplied by the Aviation Board. Host argued that it had relied, in preparing its bid, on the passenger enplanement provisions[1] provided by the Board. Host threatened to file suit to annul the lease if the amendments were not made.
Subsequently, Host’s, proposed amendment to the lease with the Airport was considered by the Board. The Director of the Aviation Board, Paul Stoulig, reported to the Board the demands of Host. The *1044 Chairman of the Board, Jerome Glazer, appointed a special three-man committee to review the matter, and this committee reported its findings to the entire Board.
Mr. Herbert Christenberry, special counsel of the New Orleans Aviation Board, had meetings with the committee to discuss the amendment. These meetings included a discussion of Mr. Christenberry’s legal opinion concerning the merits of Host’s demand. On the basis of his legal research, Mr. Chris-tenberry advised the committee that the lease was subject to reformation or cancellation.
After due deliberation, the New Orleans Aviation Board recommended that the lease be amended. And, on December 5, 1974, the New Orleans City Council adopted Ordinance No. 5594 which authorized the amendment to the July 1, 1970 lease. The ordinance was duly approved by the Mayor on December 11, 1974. The amendment reduced the minimum guaranteed annual rentals to $660,000 per year from more than $1,000,000 per year or a payment of 27 cents per enplaned passenger. In other words, the Board would receive the greater sum of either 27 cents per enplaned passenger or $660,000. Under the amendment, Host was also given additional space at the airport without additional charge. In other respects, the original lease remained in full force and effect.
ISSUES
The general issue of this case is whether the amendment of the Host lease was illegal and therefore a nullity. In order to answer this question, it is necessary to analyze three specific issues.
(1) Did the amendment violate the Louisiana Public Bid Laws?
(2) Did the amendment violate the “prudent and efficient” management clause of the Airlines’ lease?
(3) Did the amendment impair the Airlines’ contract rights and deny the Airlines of due process?
PUBLIC BID LAWS
In 1962, the City Council of New Orleans enacted Ordinance No. 2500 M.C.S., which provided in pertinent part:
“Section 1. That, on and after the effective date of this ordinance, no lease of property belonging to the City of New Orleans for a period of more than one (1) year shall be entered into unless the same has been awarded to the highest responsible bidder, after due advertisement and evaluation of bids received by the Bureau of Purchasing and the Department of Finance.”
* Sic * * * *
“Section 4. That the Council, by a majority vote, may authorize leasing of property in a manner other than prescribed herein.”
The above Ordinance (with minor amendments) was in effect at the time of this controversy.
Also in effect were the following provisions of the Louisiana Constitution of 1921 and the New Orleans Home Rule Charter.
Louisiana Constitution (1921), art. 14 § 31.6(D) provided that:
“The City of New Orleans, acting by and through the New Orleans Aviation Board, with the approval of the City Council, is empowered to, and shall, impose, charge and collect, rates, fees, rentals, and other charges for the use of said Moisant International Airport and of the facilities constructed pursuant to this Section, in such amounts as will be sufficient at least to provide revenues adequate to maintain and operate the said Airport and facilities heretofore or hereafter constructed, to pay the principal of and interest on and premiums, if any, upon redemption of such obligations, to provide for the renewal and replacement of any or all of the Airport facilities and adequate reserves for all of such purposes, and for that purpose may contract for the operation of the said Moisant International Airport or lease all or any part thereof, to any person or corporation, public or private, upon such terms and conditions, and for such period of years as the New Or *1045 leans Aviation Board may deem advisable, after having received the approval of the City Council.” (emphasis added)
The New Orleans Home Rule Charter, 6-307(4), provided that:
“Contracts for the leasing of property belonging to the City for periods of more than one year shall be subject to requirements which may be imposed by ordinance.”
Examining the language of these two provisions, it appears that the Louisiana Constitution and the Home Rule Charter placed only one limit on the City’s authority to lease property. That is, the City’s authority was limited only by requirements and/or restrictions approved by the City Council.
In 1974, the City Council approved the Host amendment in Ordinance No. 5594, M.C.S. Therefore, the board received the requisite approval of the City Council as required by the Louisiana Constitution and the New Orleans Home Rule Charter. By enacting Ordinance 5594, the City Council manifested an intent to avoid the restrictions of the public bidding ordinances, specifically Ordinance 2500.
Plaintiffs point out that repeals of laws by implications are not favored, citing City of New Orleans v. Liberty Shop, 162 La. 39, 110 So. 81 (1926). However, in City of New Orleans v. Liberty Shop, the court clearly qualified the general rule. It held that repeals by implication are not favored unless the intention of the party plainly appears. The City of New Orleans contends that the intention of the Council to obviate Ordinance 2500 is patently obvious.
Further support for this argument is found in National Car Rental Systems Inc., v. City of New Orleans, 160 So.2d 601 (La. App. 4th Cir.1964). The court at p. 608 stated:
“It is our opinion that any lease of Airport property must, under the provisions of Article 14, Section 31.6 of the Constitution, be approved by the City Council, and the City Council by Ordinance No. 2500 had decreed in effect (subject of course to some future action taken by majority vote of the Council) that no lease exceeding one year in duration will be approved unless it has been entered into after competitive bidding.” (emphasis added)
In the instant case, just such action was taken by a majority vote of the Council. This occurred when the Council passed Ordinance 5594. This action demonstrates to this Court an intent by the Council to avoid the bidding ordinances, making Ordinance 2500 inapplicable.
Appellants cite W.R. Aldrich & Co. v. Gravity Drainage District No. 1, 238 La. 190, 114 So.2d 860 (1959); Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34 (1926); Sternberg v. Board of Com’rs of Tangipahoa Drainage District No. 1, 159 La. 360, 105 So. 372 (1925) which stand for the proposition that specifications in contracts cannot lawfully be altered after bids have been made without a new advertisement giving all bidders an opportunity to bid under the new conditions. All of these cases deal with contracts covered under the State bidding law; we are not dealing with such a situation here. Accordingly, we can find no violation of Louisiana Public Bidding laws.
MANAGEMENT CLAUSE
The Airlines contend that the Host amendment violated the terms of the City’s lease with the Airlines. As mentioned above the lease between the Airlines and the City is a “residual cost” lease. Under this type of lease, the City is guaranteed that the Airport will not operate at a deficit.
In return for this guarantee, the leases of the Airlines contain a “prudent and efficient” management clause. In this clause, the City promises to operate the Airport in:
“... [A] prudent and efficient manner as compared to costs and practices in effect at the most efficiently and prudently managed airports of substantially similar size and activity in the United States.”
The Airlines argue the evidence is overwhelming that the amendment was nei *1046 ther prudent, nor efficient. To support this argument, the Airlines point to the numerous expert witnesses who testified that the Host amendment was not a wise business decision. However, whether or not the amendment was a wise business decision is not the issue. The real issue is whether the amendment violated the “prudent and efficient” management clause.
In order to answer this question, it is necessary for this court to interpret the meaning of the management clause. The City’s interpretation of the clause is that the City agreed to manage the Airport prudently and efficiently — the operation being evaluated as a whole. The City advances the theory that its actions should not be able to be attacked in isolation.
Roger Bates, an expert in the operation and management of airports, testified that the overall operation of the Airport is prudent and efficient. There is little if any evidence' in the record to contradict this testimony.
The Airlines counter that the above interpretation of the lease violates the intent of the parties and the plain meaning of the language. If overall administration is allowed to control, the Airlines assert there is no way to determine when the Airport management can be called upon to account for a gross error. Finally, the Airlines plead that prudent and efficient overall management of the Airport cannot justify the voluntary forfeiting of over two million dollars in revenues.
The City points out that no revenue was actually forfeited because any loss would have to be made up by the Airlines. This is unfortunate from the Airlines’ point of view, however the City of New Orleans and the Aviation Board must balance the interests of various entities, not just the interests of the Airlines. For example, the Board must balance the interest of workers, airlines, concessionaires, and primarily the public. If the Board perceives the interest of the Airlines to be in conflict with those of another party, the Board is not required to treat the Airlines’ interest as paramount.
The Airlines have also alleged that the Aviation Board was inefficient in balancing the various interests involved. However, a review of the facts indicates that this is not so. The Board appointed a special committee to review the matter and report to the full Board. The Board consulted with their chief legal advisor regarding the amendment. In addition to advice of counsel, the Board weighed a number of variables including the effect on the travelling public of increased prices for food and the possible lack of service and/or delays to travelers if Host failed to honor its contract. In essence, the Board weighed the possibility of greater residual costs to the Airlines against the Airport’s management of its concessions and concern for travelers. Such consideration indicates to this Court that the Board attempted to consider all factors in making its decision to amend the original lease. Such an approach is not indicative of inefficiency by the Board.
Finally, the Airlines argue, that a balancing of interests should never have occurred because the Board’s initial inquiry into the matter was inadequate. The Airlines maintain that Host had no basis for relying on emplanement forecasts, and therefore had no basis for damages. Admittedly, the record indicates that the City had probably not guaranteed or warranted the enplanement forecasts. In a case which deals with this specific issue, State v. American News Company, 152 Conn. 101, 203 A.2d 296 (1964), it was held that forecasts, or projections of traffic, which are issued to bidders are estimates and not guarantees. For these reasons, the Airlines feel that it was imprudent for the City to accede to Host’s demands. Nonetheless, the board simply relied on their legal advisor’s opinion on the matter and it cannot be said that they were acting imprudently by relying on his expertise in evaluating a possible claim by Host against the Board and the City.
DUE PROCESS
The Airlines’ final argument is two-pronged. They contend that the amendment to the Host least impaired their con *1047 tract rights and due process rights in violation of Art. I, Section 10 of the United States Constitution and of Art. I, Section 2 of the Louisiana Constitution of 1921. They assert that the City’s act was approved as an appropriate legislative act under Constitutional authority, but the City should not be allowed to extract itself from its contracts by legislative fiat. In support of their position, the plaintiffs rely on two cases, United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); La. Gas Service Co. v. La. Public Service Com’n, 245 La. 1029, 162 So.2d 555 (La.1964).
However, even assuming there was an impairment of contract, the Contract Clause is not an absolute bar to subsequent modification of a contract by a government entity. An impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. United States Trust Co. of New York v. New Jersey, supra.
The procedural due process argument of the Airlines appears to be inappropriate considering the fact that the Airlines appeared on numerous occasions before both the Aviation Board and the City Council to voice their objections. All of their arguments and opposition was heard before the amendment was voted upon and we conclude that their argument is without merit.
Accordingly, we can find no error in the judgment of the trial court. For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
WILLIAMS, J., dissents with written reasons.

. These provisions were attached to the lease agreement, but no mention of these forecasts appear in the agreement itself.