742 So.2d 26 (1999)
STATE MACHINERY & EQUIPMENT SALES, INC.
v.
LIVINGSTON PARISH GRAVITY DRAINAGE # 5.
No. 98 CA 1207.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
Steve B. Loeb, Baton Rouge, Frank W. Lagarde, Jr., Metairie, for Plaintiff-Appellant State Machinery & Equipment Sales, Inc.
Rodney N. Erdey, Livingston, for Defendant-Appellee Livingston Parish Gravity Drainage # 5.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
This action arose when defendant, a political subdivision, after inviting and receiving *27 bids for the lease-purchase of a hydraulic-crawler excavator, rejected the low bid submitted by plaintiff, a heavy equipment dealer, and awarded the contract based upon a higher bid submitted by plaintiff's competitor. Plaintiff filed suit against defendant challenging the rejection of its bid, and seeking injunctive relief. In the alternative, plaintiff sought damages and attorney's fees. Following a hearing, the district court dismissed plaintiff's suit. Plaintiff now appeals. We reverse and remand.

FACTS
The record reflects that in the latter part of 1995, defendant, Livingston Parish Gravity Drainage District # 5 ("drainage district"), determined that it would be necessary to purchase a hydraulic excavator to fulfill the drainage needs of the district. In furtherance of this proposed acquisition, drainage district foreman, Gerald Green ("Mr. Green"), contacted various equipment dealers to request information and/or brochures regarding their respective products. It should be noted that State Machinery was not one of the firms contacted by Mr. Green.
According to the testimony of Mr. Green, representatives from several firms including, Norwel Equipment Company ("Norwel") and Crawler Equipment, also sent representatives out to drainage district job sites. Thereafter, Mr. Green, along with then drainage district chairman, Donald Townsend ("Mr. Townsend"), and then drainage district vice-chairman, Lester Hall, drafted a set of specifications for an excavator that would suit the needs of the drainage district. The bid request further set forth certain bid specifications and requirements for the acquisition of the excavator under a 60-month governmental lease-purchase plan.
Shortly after publication of its bid request, a possible notice error was discovered, and the drainage district, on advice of its legal counsel, rejected the bids received, and re-advertised for bids. In response to this second bid request, plaintiff, State Machinery and Equipment Sales, Inc. (State Machinery), submitted a bid on February 19, 1996, covering a Hyundai 200 LCM (Long Crawler Modulator) Hydraulic Excavator. The State Machinery bid set forth a total sales price of $106,907.00, payable under a 60-month lease-purchase at $2,120.12 per month, with extended warranty, or $2,064.37, without the warranty.
At a March 2, 1996 public meeting, the drainage district opened the three bids received and empowered Mr. Townsend to review the bid proposals for purposes of determining the lowest bid in compliance with the bid specifications. After reviewing all three bids, Mr. Townsend ultimately concluded that the bid submitted by Norwel Equipment Company ("Norwel Equipment") substantially complied with the bid specifications and was the lowest responsive bid. The bid submitted by Norwel Equipment set forth a price of $124,732.00 for a John Deere 690E LC excavator. In a certified letter dated March 12, 1996, the drainage district, through Mr. Townsend, advised State Machinery that its bid had been rejected due to its failure to comply with bid specifications.
Upon receipt of the certified rejection letter, representatives of State Machinery requested, through numerous telephone conversations with Mr. Townsend and the drainage district's legal counsel, an opportunity to clarify the specifications contained within their bid proposal. Representatives of State Machinery further alleged that the bid specifications prepared by the drainage district were illegally "closed" in that only one particular manufacturer could satisfactorily comply with the specifications as set forth in the bid request. The drainage district, in a special meeting held on April 16, 1996, and in a regular meeting held on April 22, 1996, adopted a resolution approving the lease-purchase of the John Deere excavator from Norwel Equipment upon written approval of the bonding *28 commission. A contract to this effect was later signed on or about May 2, 1996.
Thereafter, on May 13, 1996, State Machinery filed a Petition for Preliminary Injunction and Permanent Injunction Relief against the drainage district and its chairman, Mr. Townsend. The petition filed by State Machinery alleged that the drainage district had been arbitrary and capricious in rejecting its bid. Additionally, State Machinery asserted that the language used by the drainage district in its bid request had been narrowly and specifically drafted so as to exclude true competition. In the alternative, State Machinery prayed for an award of damages. The drainage district later answered the petition and filed peremptory exceptions raising objections of no cause of action and no right of action.

ACTION OF THE DISTRICT COURT
On December 13, 1996, the district court overruled the peremptory exceptions filed by the drainage district. The drainage district, immediately prior to the hearing on State Machinery's rule for injunctive relief on December 23, 1996, filed a motion for supervisory writs as to the district court's denial of its exceptions. The district court, while declining to stay the evidentiary portion of this matter, nevertheless agreed to postpone its ruling pending this court's disposition of the writ. Subsequently, on May 30, 1997, this court declined to exercise its supervisory jurisdiction asserting that the criteria set forth in Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), had not been met.[1]
The district court, in a judgment signed on November 26, 1997, subsequently rejected the demand put forth by State Machinery and dismissed its suit. In written reasons for judgment issued October 29, 1997[2], the district court cited provisions of both the Public Bid Law (La. R.S. 38:2211 et seq.) and the Louisiana Procurement Code (La. R.S. 39:1554 et seq.). Relying upon La. R.S. 39:1671(A) of the Louisiana Procurement Code, the district court held that inasmuch as State Machinery had failed to file its protest prior to the opening of bids, it had waived any objections it may have been able to assert regarding the closed nature of the bid specifications. The district court further determined that the drainage district was not unreasonable in its rejection of State Machinery's bid. From this judgment, State Machinery now appeals.

ASSIGNMENTS OF ERROR
On appeal, State Machinery asserts that the district court erred in the following respects:
1. In holding that the State Machinery was untimely in its assertion that the drainage district's request for bid proposals constituted an illegal "closed specification;"
2. In affirming the drainage district's rejection of State Machinery's low bid;
3. In failing to award injunctive relief and/or damages.

ANALYSIS AND DISCUSSION
The basic statutory law governing the disposition of this case is contained within La. R.S. 38:2211 et seq., more commonly referred to as the Public Bid Law. Pursuant to La. R.S. 38:2212(A)(1)(a)(i), "all purchases [by a public entity] of any materials or supplies exceeding the sum of fifteen *29 thousand dollars to be paid out of public funds" shall be advertised and let to the lowest responsible bidder.[3] In discussing the Public Bid Law, the Louisiana Supreme Court stated, "[t]his statutory law is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices." Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1032 (La.1990) (citations omitted).
Earlier, in Houghton Elevator Division v. State of Louisiana Through Division of Administration, 367 So.2d 1161 (La.1979), the supreme court explained:
"[t]he statute vests in the awarding authority the power and discretion to determine the responsibility of the bidder and to reject all bids if none is satisfactory, but the law does not permit the arbitrary selection of one which is higher and the rejection of others which are lower. The discretion must be exercised in a fair and legal manner and not arbitrarily."
Houghton, 367 So.2d at 1165 (citation omitted).
The supreme court in Houghton quoted with approval Housing Authority of Opelousas, Louisiana v. Pittman Construction Company, 264 F.2d 695 (5th Cir. 1959), wherein the federal court, after reviewing several Louisiana cases, concluded:
[I]t is clear that Louisiana follows the general rule of vesting an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good faith judgment of an administrative agency, but an awarding body's administrative discretion must be exercised in a fair and legal manner and not arbitrarily.
Housing Authority of Opelousas, 264 F.2d at 703.

Timeliness of Complaint by State Machinery
In the instant case, the first issue raised by State Machinery is that the district court erred in holding that State Machinery had been untimely in asserting its challenge to the bid specifications put forth by the drainage district. State Machinery alleged that the bid request had been written to insure that only Norwel Equipment could meet the specifications thereby effectively barring all other bidders from the bidding process. The district court, in its written reasons for judgment, cited La. R.S. 39:1671(A) of the Louisiana Procurement Code and concluded:
With respect to this argument, it should be noted that since State Machinery made no protest prior to and at the time of the bid opening it must be considered that it waived its objection. It was only after the rejection of its bid did it voice a complaint. For these reasons, the Court finds that State Machinery's claim that they were closed bids is without merit.
La. R.S. 39:1671(A) of the Louisiana Procurement Code, the statute relied upon by the district court, provides:
Right to protest. Any person who is aggrieved in connection with the solicitation or award of a contract shall protest to the chief procurement officer. Protests with respect to a solicitation shall be submitted in writing at least two days prior to the opening of bids on all matters except housing of state agencies, their personnel, operations, equipment, or activities pursuant to R.S. 39:1643 for which such protest shall be submitted at least ten days prior to the opening of bids. Protests with respect to the award of a contract shall be submitted in *30 writing within fourteen days after contract award.
As State Machinery correctly points out in its brief to this court, the Louisiana Procurement Code clearly states that "[t]he procurement of supplies, services, major repairs, and construction by political subdivisions of this state shall be in accordance with the provisions of R.S. 38:2181 through 38:2316 [the Public Bid Law], except that all political subdivisions are authorized to adopt all or any part of this Chapter and its accompanying regulations." La. R.S. 39:1554(E).
In view of the mandatory language of La. 39:1554(E), and there being no evidence in the record to indicate that the drainage district ever adopted any portion of the Louisiana Procurement Code, we can only conclude that the district court erred as a matter of law in determining that State Machinery's challenge of the bid specifications was untimely based upon its application of the Louisiana Procurement Code. The Public Bid Law, not the Louisiana Procurement Code, applies to this case.
A review of the record reveals that following publication of its request for bids, the drainage district publicly opened the three bids it received at a public meeting held on March 2, 1996. After taking the bids under review, the drainage district, in a letter to State Machinery dated March 12, 1996, advised that its bid had been rejected due to its alleged failure to meet bid specifications. In the month and a half that followed, there were discussions between the parties, and at one point, counsel for the drainage district communicated that he would recommend that his client revise and re-advertise the bid specifications. The drainage district ultimately elected not to redraft the bid specifications, and in a meeting held on April 22, 1996, voted to award the contract to Norwel Equipment pending approval from the state bond commission. After obtaining the approval of the bond commission, the drainage district, on May 2, 1996, negotiated a lease-purchase with Norwel Equipment for the acquisition of the John Deere hydraulic excavator. State Machinery filed the instant suit attacking the wrongful award of the bid contract approximately two weeks later on May 13, 1996.
Our Louisiana Supreme Court, in Airline Construction Company, Inc., held that
[A]n unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body.... If an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages against the public body or the successful bidder.
The timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awarding of the illegal contract and the completion of construction.
Airline Construction Company, Inc., 568 So.2d at 1035.
Inasmuch as there were apparently ongoing discussions between the parties relative to the possibility that the drainage district might redraft its bid specifications and thereby obviate the need for legal action, we cannot say that the filing of the suit by the State Machinery approximately two weeks after the negotiation of the contract in favor of its competitor was unreasonable and not timely.
The parties do not dispute that the bid submitted by State Machinery was the lowest bid received by the drainage district. *31 In light of our determination that State Machinery's suit to enjoin the drainage district's award of the excavator contract to Norwel Equipment was timely filed, we must now address the issue of whether the drainage district properly rejected the low bid submitted by State Machinery.

Rejection of State Machinery's Bid
Once again, we refer to the supreme court's opinion in Airline Construction Company, Inc., wherein the court held:
In a public project advertised for public bidding, there is no contractual relationship between an unsuccessful bidder and the public body who advertises for bids. However, although an unsuccessful bidder does not have a cause of action in contract against the public body, the lowest responsible bidder does have a cause of action to challenge timely the rejection of his bid and to compel the award of the contract to him. Haughton Elevator Division v. State of Louisiana through Division of Administration, 367 So.2d 1161 (La.1979). Louisiana jurisprudence has long recognized that while a public body has some discretion in awarding public contracts, subject to judicial review, an unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder. Sternberg v. Board of Commissioners of Tangipahoa Drainage District 1, 159 La. 360, 105 So. 372 (1925).
Airline Construction Company, Inc., 568 So.2d at 1032 (footnote omitted).
The Public Bid Law presently provides, in relevant part, that "[t]he public entity may reject any and all bids for just cause." La. R.S. 38:2214(B); New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223, p. 5 (La.4/10/95), 653 So.2d 538, 541. In Rosenbush Claims Service, Inc., the supreme court was confronted with the question of whether "just cause" was required in all instances for the rejection of contracts in view of the statute's use of the permissive "may" rather than the mandatory "shall".
In reviewing the history of La. R.S. 38:2214, the supreme court noted that the statute had been amended several times to require that the awarding authority have first "cause" and then "just cause" to reject any and all bids. The court added that in a 1991 amendment, the legislature even illustrated the sort of circumstances that would constitute "just cause." The court opined that "[c]learly, the legislature intended to change the total discretion previously given to awarding authorities which allowed them to reject any and all bids without any explanation." Rosenbush Claims Service, Inc., 94-2223 at 12, 653 So.2d at 544. The court concluded:
The proper interpretation of the statute is that the public entity must have just cause to reject any bid and, likewise, it must have just cause to reject all bids. This requires that the public entity have a just, reasonable basis for rejecting a bid, yet it does not dictate that it must reject bids on every occasion where such a reason is found to exist.
Rosenbush Claims Service, Inc., 94-2223 at 12-13, 653 So.2d at 545.
Turning now to the facts presented by the instant case, the question to be resolved is whether the drainage district had "just cause" to reject the low bid of State Machinery. The record reflects that in a letter to State Machinery dated March 12, 1996, Mr. Townsend, writing on behalf of the drainage district, advised that the State Machinery bid was being rejected because it "[d]id not meet bid specs." Specifically, the letter pointed out discrepancies relating to engine displacement, hydraulic system, undercarriage requirements, and operating data.
At the trial of this matter, drainage district foreman, Gerald Green ("Mr. Green"), testified that he called several different companies and requested brochures, *32 prior to the preparation of the bid specifications on the excavator sought to be acquired by the district. Mr. Green acknowledged that he "didn't call [State Machinery]. I never knew they existed.... Never even heard of them." Mr. Green further testified that Crawler Supply and Norwel Equipment sent representatives out to drainage district job sites. Conceding that he is not an expert on equipment, Mr. Green stated that he sought advice from these individuals as to what the district needed to purchase.
A review of the promotional brochure on the John Deere 690E LC excavator which the drainage district ultimately purchased from Norwel Equipment, reveals marked similarities between said product and the requirements set forth by the drainage district in its bid specifications. It should further be noted that the bid specifications prepared by Mssrs. Townsend, Hall, and Green on behalf of the drainage district are set forth in the same order as they appear in the John Deere brochure.
At trial, B.J. Conrad ("Mr. Conrad") testified on behalf of State Machinery. Mr. Conrad, who prior to his retirement was employed for twenty-eight years by the New Orleans Sewage and Water Board, was accepted by the court as an expert in the preparation of bid specifications for the purchase of heavy equipment. According to Mr. Conrad, "this spec [as put forth by the drainage district] was based on a John Deere brochure. It was right down the line as the John Deere specification. The Kobelco and the Hyundai would do the same thing and there are slight varies [sic] in each one of them."
Mr. Conrad further noted that the maximum "reach" of the Hyundai excavator was 36 feet, 7 inches, as opposed to 35 feet for the John Deere. "Grade ability" was defined by Mr. Conrad as the machine's ability to sit at an angle and perform work. According to Mr. Conrad, John Deere is the only manufacturer that still rates their equipment at 45 degrees, 100 percent grade ability. The other manufacturers in the heavy equipment industry now rate their equipment at 35 degrees, 70 percent grade ability. Mr. Conrad opined that it was his belief that it would be rather unstable to operate heavy equipment at a 45-degree angle.
With regard to the "wet sleeve" engine specified in the bid request, Mr. Conrad again noted that John Deere is the only manufacturer still using this type of engine. Mr. Conrad pointed out that the oring seals on this type of engine were prone to leak. Describing the "wet sleeve" engine as the dinosaur of the industry, Mr. Conrad claimed this type of engine was being increasingly phased out. Mr. Conrad concluded that because all three excavators were functionally equivalent and basically the same, the John Deere excavator did not justify its increased cost.
Upon review of the record, we note that the bid specifications prepared by the drainage district further specified certain minimum requirements relating to engine displacement, horsepower, hydraulic speed, and length of track adjusters. The Hyundai excavator offered by State Machinery exceeded the minimum requirements of the bid specifications in some respects, but fell short in other areas. Asserting that the equipment that it offered for sale met or exceeded the overall functional requirements of the bid specs, State Machinery argues that the drainage district's rejection of its bid proposal constituted an illegal "closed specification."

"Closed Specification"
In his testimony at trial, Edward Renton, the president of State Machinery, defined a "closed specification" as a situation in which "there is only one product that can meet the specifications as written." In its brief to this court, State Machinery points out La. R.S. 38:2212(F) of the Public Bid Law provides,
(1) Whenever a public entity desires to purchase technical equipment, apparatus, machinery, materials, or supplies of a certain type and such purchases are *33 clearly in the public interest, the public entity may specify a particular brand, make, or manufacturer in the specifications let out for public bid as provided by this Part. If a particular brand, make, or manufacturer is specified, the model or catalog number also shall be specified.
(2) Wherever in specifications the name of a certain brand, make, manufacturer, or definite specification is utilized, the specifications shall state clearly that they are used only to denote the quality standard of product desired and that they do not restrict bidders to the specific brand, make, manufacturer, or specification named; that they are used only to set forth and convey to prospective bidders the general style, type, character, and quality of product desired; and that equivalent products will be acceptable. It shall be the responsibility of the professionally employed architect or engineer to determine what is considered an equivalent product on any and all projects in which he has been legally employed to perform his professional services.
State Machinery then cites La. R.S. 38:2290, commonly referred to as the "Closed Specification Statute", which provides in pertinent part,
A. No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building or except in those cases where a particular material is required to preserve the historical integrity of the building or the uniform appearance of an existing structure.
B. A closed specification shall not be submitted or authorized when any person or group of persons possess the right to exclusive distribution of the specified product ....
Relying upon the supreme court's language in Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1364-5 (La. 1991), State Machinery asserts that the Closed Specification Statute "was designed to supplement the Public Bid Law by prohibiting the use of closed specifications which exclude products of equal utility and appearance and consequently prevent or restrict full and free competition."
State Machinery directs our attention once again to Louisiana Associated General Contractors, Inc., wherein the supreme court later stated:
In the area of product specifications, the emphasis in the statutory language and the case law is on the quality of the product or material. Under the Public Bid Law, a public entity is allowed, subject to certain legislatively imposed restrictions, to specify a particular quality of product desired. A public entity may not impose a product specification which suppresses competition by eliminating products of equal quality.
* * * * * *
Specifications should be drafted so that the goods or services desired are definitively set forth and yet not be so restrictive as to eliminate competition. Great care must be taken to see that specifications are properly tailored so that the ultimate goal of the system (to promote competition) is not lost.
Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d at 1365-66 (Emphasis in original).
As we have previously noted, it is undisputed that the bid submitted by State Machinery was the lowest bid received by the drainage district. Under the provisions of the Public Bid Law, a public authority, such as the drainage district, is required to award a public contract to the "lowest responsible bidder;" however, this does not mean that the public authority is required to accept the lowest monetary bid. Louisiana Associated General Contractors, Inc., 586 So.2d at 1362. We conclude, *34 based upon the evidence presented and the testimony adduced at trial, that in addition to being the lowest bid received, the State Machinery bid was also the lowest responsible bid. Accordingly, we hold that the drainage district lacked "just cause" and was arbitrary and capricious in its rejection of State Machinery's bid proposal.

Failure of Lower Court to Award Injunctive Relief and/or Damages
Based upon our earlier determinations that (1) State Machinery filed suit timely to enjoin the drainage district's award of the excavator contract to Norwel Equipment, and (2) that the drainage district did not have "just cause" to reject State Machinery's low bid proposal, we hold that State Machinery is entitled to assert a claim for damages against the drainage district. See Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847 (La.App. 1 Cir.1992), writ denied, 614 So.2d 82 (La. 1993); see also Boh Bros. Construction Co., L.L.C. v. Department of Transportation and Development, 97-0168 (La.App. 1 Cir. 7/14/97), 698 So.2d 675, writ denied, 97-2113 (La.11/21/97), 703 So.2d 1309.
According to the facts as set forth in the record, State Machinery filed the instant suit seeking injunctive relief, and in the alternative, damages, on May 13, 1996, eleven days after the drainage district signed a 60-month lease-purchase contract with Norwel Equipment. The drainage district later answered the petition; however, a hearing on State Machinery's request for a preliminary injunction was, over its objection, postponed due to the scheduled retirement of the original trial judge.
The drainage district then filed certain peremptory exceptions that were overruled by the district court. The drainage district then sought writs from this court. The trial judge, while declining to stay the proceedings, heard the evidentiary portion of this matter on December 23, 1996, but agreed to postpone his ruling pending this court's disposition of the writ.
On May 30, 1997, this court ultimately declined to exercise its supervisory jurisdiction; however, the district court failed to promptly advise the trial judge pro tempore of said ruling. Following an inquiry from counsel for State Machinery, the district court issued written reasons on October 29, 1997, rejecting State Machinery's demand and dismissing its suit. A judgment was later signed on November 26, 1997.
State Machinery then appealed. As of May 1999, more than three years have elapsed since the awarding of the 60-month lease-purchase contract. While the circumstances giving rise to this delay did not result from the fault of State Machinery, it is clearly too late to enjoin the contract. We are, nevertheless, unable to say that State Machinery is not entitled to pursue its action for damages.
The record further reflects that at the trial of this matter, State Machinery attempted to elicit testimony from its president, Ed Renton, relative to the amount of monetary damages it had sustained as a result of the rejection of its bid proposal. Concerning this testimony, the trial judge stated:
Let me say this. There's been no objection to his testimony, but my understanding that this is only towe're here for Preliminary Injunction, not a claim for loss of earnings or a suit for damages. It may be that that may be a corollary of your suit, but that's not what we're here for today, to assess any damages.
Later, the trial judge continued:
As I say, I don't plan at this moment in time, and I don't even know if it's a plea ask [sic] for damages, but if it does, that's not before me.
. . . .
What I was saying, I'm sure [counsel for the drainage district] is not in a position to, if you will, resist any claim for damages in this hearing.
*35 Although the record does contain some evidence of the damages sustained by State Machinery, the foregoing testimony reveals that the district court curtailed further testimony regarding the issue of damages. Inasmuch as the drainage district was not given an opportunity to respond as to the issue of damages purportedly sustained by State Machinery, we hereby remand this matter back to the district court for further proceedings relative to an award of damages.

DECREE
For the above and foregoing reasons, the judgment of the district court rejecting the demand of State Machinery and dismissing its suit is hereby reversed, and this matter is hereby remanded back to the district court for further proceedings relative to an award of damages. All costs associated with this appeal are assessed against defendant, Livingston Parish Gravity Drainage District # 5.
REVERSED AND REMANDED.
FITZSIMMONS, J., subscribes to the opinion, and assigns additional reasons.
FITZSIMMONS, Judge, subscribing, and assigning additional reasons.
I subscribe to the opinion. I write separately only to point out that the question of the types of damages that may be allowed in the suit against the Gravity Drainage District, such as loss of profits, quantum meruit, or expenses of the preparation and submission of the bid, is undecided. See Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1033-34 (La.1990); Stafford Construction Company, Inc. v. Terrebonne Parish School Board, 612 So.2d 847, 853 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La.1993).
NOTES
[1] State Machinery and Equipment Sales, Inc. v. Livingston Parish Gravity Drainage District No. 5, 97-CW-0028 (La.App. 1 Cir. 5/30/97).
[2] It should be noted that a note typed at the end of the district court's written reasons for judgment, indicates that the trial judge was not immediately advised of this court's subsequent refusal on May 30, 1997, to grant the drainage district's writ request. Accordingly, a determination of this matter was not made until counsel for State Machinery wrote the trial judge on September 17, 1997, to notify the court of the appellate action and to request a ruling.
[3] The monetary threshold for application of the Public Bid Law with regard to the purchase of goods and services has, by virtue of 1997 La. Acts No. 1257, § 1, been increased from $10,000.00 to its current level of $15,000.00.