JiCIACCIO, Judge.

WRIT GRANTED

We granted certiorari in this case to consider the propriety of the trial court’s denial of relator’s petition for preliminary injunction. For the reasons stated more fully herein, we reverse the judgment of the trial court and remand this ease to the trial court with instructions.

STATEMENT OF THE FACTS

On April 4, 1995, the City of New Orleans issued a proposal which invited sealed, competitive bids from parties interested in contracting for the collection, shredding and disposal of approximately 700,000 waste tires located in Orleans Parish. Bidders were asked to bid a single unit price per tire to cover all costs to shred each tire and haul and dispose of the shreds.
Pursuant to this invitation for bids, over 20 companies attended a mandatory pre-bid conference held on April 25,1995. However, only two companies actually submitted bids for the project: River Road Construction, Inc., relator herein, and Merrick Construction, Inc. At the bid opening on May 18, 1995, River Road submitted the lowest bid of $1.0989 per tire and Merrick submitted a higher bid of $1.38 per tire. On its face, the River Road bid was twenty percent lower than the Merrick bid. Relator alleged that the price differential was approximately $200,000.00.
Following the submission of bids, the City notified River Road by letter dated July 18, 1995 that it proposed to disqualify River Road’s bid because the 1 2City had received a bid from a higher ranking bidder. River Road requested a hearing to protest its proposed disqualification, and this hearing was held on July 26,1995. On July 27, 1995, the *1168 City Attorney’s office found River Road’s protest to be without merit and recommended the contract be awarded to Merrick Construction, Inc.
On July 28, 1995, River Road filed a Petition for Preliminary and Permanent Injunction and for Writ of Mandamus seeking to enjoin the City from awarding the contract to any other bidder other than River Road. In its petition, River Road contended that the disqualification of their bid was in violation of the Public Bid Law, LSA-R.S. 38:2212. River Road also filed a Motion for Temporary Restraining Order on this date which was denied by the trial court. The matter was set for hearing on the preliminary injunction on August 7, 1995. On July 31, 1995, the trial court issued an order that the application for the preliminary injunction was to be heard upon the verified pleadings and supporting affidavits alone. No objection was made by the parties to this procedure, and there was no request for an evidentiary hearing.
Accordingly, the matter was submitted to the court for consideration on the basis of pleadings, affidavits and exhibits. On August 7, 1995 the trial court rendered judgment with written reasons denying River Road’s petition for preliminary injunction.
River Road now seeks supervisory review from this Court, arguing that the disqualification of its bid by the City constitutes a violation of the Public Bid Law, more particularly LSA-R.S. 38:2212.A.(1)(a), which requires that all contracts be awarded to the “lowest responsible bidder.” Plaintiff seeks to enjoin the disqualification of its bid and alternatively to annul the contract to Merrick if it has been awarded. River Road also seeks a writ of mandamus requiring the City to award the contract to River Road.

J¿DISCUSSION

The combined provisions of the City Public Bid Law found in Section 6-307(5) of the Home Rule Charter for the City of New Orleans and the State Public Bid Law in LSA-R.S. 38:2211, et seq., require that contracts for any services, other than “professional” services, be let out by public bid. The Public Bid Law requires that the contract for public work be awarded to the “lowest responsible bidder who has bid according to the contract, plans and specifications, as advertised, ...” LSA-R.S. 38:2212(A)(1)(a).
River Road argues that their bid constitutes the lowest responsible bid, and the City is therefore required to award the contract to River Road. They argue that their bid complies with the contract and specifications, and that River Road has proven experience and capabilities sufficient to perform the work.
The City’s decision to disqualify River Road’s bid was based on a section contained in the general specifications of the bid proposal in which the City establishes a ranking system as follows:
Because the City desires to promote the recycling of resources as opposed to land disposal, the City will give the highest priority to the lowest responsible bid that conforms to the following order of processing/disposal techniques:
Priority 1. Processor/Recyeler
Priority 2. Processor/Monofill (Temporary Storage for Recycling)
Priority 3. Processor/Beneficial Reuse
Priority 4. Processor/Landfill Disposal
The City found that River Road’s bid should be ranked as a Priority 4 because River Road proposed to dispose of the tire shreds at a landfill which was authorized by the City’s bid specifications. The City ranked Merrick as a Priority 1 because Merrick proposed to dispose of the tire shreds at a monofill. The City thus concluded that regardless of the lower monetary bid submitted by |4River Road, Merrick should be awarded the contract because of its higher priority ranking.
In response to this determination, River Road contends that the City’s use of this priority system is not authorized by the legislative statute or the departmental regulations and is therefore impermissible. We agree.

LEGISLATIVE HISTORY

The City contends that this priority ranking system incorporated in its bid proposal *1169 was mandated by the legislature in the statute governing the disposal of waste tires, LSA-R.S. 30:2418. This statute is incorporated in the Solid Waste Recycling and Reduction Law, LSA-R.S. 30:2411-2423. R.S. 2418, effective September 1, 1989, provides for the establishment of waste tire collection centers and renders it unlawful for any person to dispose of tires unless they are disposed of for processing at a permitted solid waste disposal facility. Section C of this statute provides that waste tires which have been prepared for disposal by cutting, separating, shredding or other means in accordance with the rules or standards of the department may be disposed of in a landfill.
Section H of that statute provides as follows:
H. On or before January 1, 1993 the secretary shall promulgate regulations and guidelines for the administration and enforcement of the waste tire program provided for in this Chapter which shall be subject to legislative review and approval by the Senate Committee on Environmental Quality and the House Committee on Natural Resources. The regulations and guidelines shall provide for but not be limited to:
(1) Establishing standards, requirements, and permitting procedures for waste tire transporters, collection sites, and processors. Requirements shall include proof of liability insurance in a sufficient amount and other evidence of financial responsibility as determined by the secretary.
| s(2) Encouraging local governing authorities to establish advisory councils to advise the secretary regarding waste tire clean up.
(3) Providing technical assistance and incentives to encourage market research and development projects, and public education concerning waste tires.
(4) Providing incentives and assistance for those persons who collect and remit the fee imposed on the sale of new tires.
(5) Providing incentives and assistance for collection and transportation of waste tires including, but not limited to, incentives and assistance for local governing authorities which shall be given the highest priority. Subject to Paragraph (7) of this Subsection, this paragraph shall not prohibit local governing authorities from splitting, slicing, shredding, or baling tires as part of the disposal process or other beneficial use.
(6) Establishing a priority system for the clean up of existing waste tires.
(7) Providing incentives and assistance to waste tire processing facilities, but only if such facilities use, consume, or process the tires so that they may be reused as a raw material, product or fuel source.
(8) Remediating environmental and public health problems caused by such waste tires.
(9) Establishing a procedure and criteria for local governing authorities to apply for and receive funds to remediate waste tire problems in their respective jurisdictions. Payment of funds to local governing authorities for waste remediation tire problems shall commence May 1,1993.
(Emphasis ours.)
LSA-R.S. 30:2413(A)(8) provides for the levying of fees to administer the statute, and R.S. 30:2418(1) states that the fee on tires authorized to be levied shall not exceed two dollars per tire. There are no provisions in the statute requiring that waste tire collectors or processors recycle or reuse the waste tires; rather, the statute permits the storage of these tires in landfills.
Pursuant to this statute, regulations and standards on the disposal of waste |6tires were promulgated by the Louisiana Department of Environmental Quality (DEQ). These regulations are attached hereto as Exhibit A. Section 10517(D) governs the long term storage of waste tires and provides:
D. Long Term Storage/Monofills
1. Tire processors may, if markets for their tire materials are not available, store waste tire material in chipped, shredded or other non-tire forms for extended periods but not to exceed five years.
2. Tire processors may store waste tire material in above ground piles or in mono-fills if:
*1170 a. the processor has no immediate market for the tire material but has reasonable belief that such markets will develop;
⅜ ⅜ ⅜ ⅜ * ⅜
3. Permitted solid waste landfills may accept chipped, shredded, cut or sliced tire material.
There are no provisions in the regulations which require the placement of the tires in a monofill rather than in a landfill. Rather, the regulations authorize processors to place the waste tire material in permitted landfills.
The City argues that LSA-R.S. 2418(H)(6) mandates the local governing authority to establish a priority system for the disposal of the tires. However, our reading of this statute, including sections (H)(5) and (6) which refer to a “priority” system, fails to indicate a mandate for the ranking system incorporated in the City’s request for bid proposals in- this case. We note first that the statute specifically authorizes in R;S. 30:2418(0 the disposal of waste tire material in a landfill. There is no provision in the statute which requires a ranking of the methods of disposal. Secondly, although the statute authorizes the department to adopt rules and regulations to encourage reduction and recycling, the regulations as promulgated by the Department of Environmental Quality do not address any type of ranking of the methods of disposal of the 17waste tire material. Rather, the regulations provide that the tire processor may store the waste tire material in above ground piles or in monofills, without reference to any type of ranking. We find nothing in the regulations to require or authorize the priority of disposal in a monofill over a landfill.
In opposition to the preliminary injunction, the City offered the affidavit of Nannette Jolivette, the Director of the Department of Sanitation who stated that during the pre-bid conference, it was explained that the bid included a priority system mandated by the Louisiana Department of Environmental Quality. She stated that the bids would be ranked first by priority and the prices compared, and then the lowest responsible bidder in the highest priority would be awarded the contract. Ms. Jolivette admitted that River Road was the “apparent low bidder,” but was rejected because it was not a Priority 1 reeycler. She stated that because the City awarded the contract to a Priority 1 reeycler, the City will receive approximately $1,400,000.00 for reimbursement of costs incurred by the City in recycling tires.
In support of this contention, the City submitted a Tire Site Cleanup Agreement whereby the DEQ agreed to funding in the amount of $1,400,000.00 for remediation of waste tire sites to be performed in compliance with DEQ regulations. There is nothing in this agreement, however, which requires the City to accept processors of waste tires who qualify as Priority 1 recyclers in order to receive the state funding. Further, there is no requirement in the regulations promulgated by the DEQ that the waste tire material be recycled rather than placed in a landfill.
Although the City cites to a letter dated December 23, 1994 from the Secretary of DEQ to the Administrator of the Solid Waste Division concerning the prioritization policy to promote the recycling of resources as opposed to land disposal, we find that the DEQ was without authority to establish such a | apriority system. The priority ranking was not contained in the statute passed by the legislature, nor was it included in the regulations promulgated by the Department after hearings and public comment. Further, we find that the Department’s implementation of the prioritization policy is in conflict with the express terms of both the statute and the promulgated regulations which permit the use of approved landfills for the disposal of waste tire materials.
Under the circumstances presented here, we find that the letting of the contract in this case by the City was improper and illegal. There is no dispute in this case that River Road’s proposal included the lowest responsible bid. The burden is on the City in this case to show just cause for the rejection of River Road’s proposal. See New Orleans Rosenbush v. New Orleans, 653 So.2d 538 (La.1995).
The City’s reliance on the prioritization policy implemented by the Secretary of DEQ *1171 is without a basis in law. The policy is not included in the regulations promulgated by the Department, and, in effect, is in conflict with those regulations. The policy, as implemented by the City, requires the rejection of any bidder who proposes disposal in an approved landfill if another bidder proposes a higher-ranked disposal method, regardless of the monetary amount of the proposal. We conclude that these specifications in the City’s request for proposal are in circumvention of not only the Public Bid Law requiring the contract to be awarded to the lowest responsible bidder, but also are in conflict with the state statute and departmental regulations authorizing the contract.
In reaching this conclusion, we are persuaded by the reasoning of our Supreme Court in Louisiana Associated General Contractors v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991), wherein the court ordered a permanent injunction prohibiting the School Board from including in its construction | gcontracts a requirement that contractors must pay prevailing wages. The Court found that including a prevailing wage rate requirement violated the Public Bid Law because the requirement was not a proper factor to consider in determining bidder responsibility and such a requirement would operate to restrict competition. The Court found that the prevailing wage requirement was a form of forbidden qualification, stating:
Absent statutory law authorizing the pre-qualification of bidders, we refuse to allow a public entity to engage in a process which eliminates certain bidders from competing before the bidding process ever begins.
Id., 586 So.2d at 1364.
In the present case, the ranking system operates to cause rejection of any bidder who does not qualify as the highest ranking bidder without regard to the monetary cost of the proposals submitted, and without a basis in the statute or the departmental regulations. The City has offered no evidence, either scientific, environmental or fiscal, to justify the implementation of the ranking system. The City has cited no provision in the statute or the DEQ regulations which authorizes the inclusion of the system in the bid specifications for this public work. The City had the burden to defend the use of its ranking system as the grounds for rejecting the apparent low bid — the City failed to do so.
We find that the City failed to show just cause for the rejection of the bid proposal submitted by River Road Construction, Inc. There is no valid basis upon which River Road’s bid was disqualified, and we find that the trial court erred in denying the preliminary injunction in this case. See Haughton Elevator Division v. State, Etc., 367 So.2d 1161, 1170 (La.1979).

CONCLUSION

For the reasons stated herein, the judgment of the trial court denying the | ipplaintiff a preliminary injunction is reversed, and the case is remanded to the district court with instructions that it issue a preliminary injunction restraining, enjoining and prohibiting the defendant, the City of New Orleans or any person acting on its behalf, from awarding the waste tire disposal contract at issue or any extensions thereto to any person, firm, or corporation other than the plaintiff, River Road Construction, Inc., the low bidder on the bid proposal, and enjoining and prohibiting the City of New Orleans from taking any further action or expending any funds in furtherance of any contract or any extensions thereof which may have been granted to any person, firm or corporation other than River Road Construction, Inc. In addition, we remand this case to the trial court for a hearing on plaintiffs application for writ of mandamus seeking a directive to the City of New Orleans to award the contract to River Road Construction, Inc.

WRIT GRANTED; JUDGMENT REVERSED; CASE REMANDED.

ARMSTRONG, J., dissents.
LANDRIEU, J., dissents with reasons.