952 So.2d 77 (2006)
STATE MACHINERY & EQUIPMENT SALES, INC.
v.
IBERVILLE PARISH COUNCIL.
No. 2005 CA 2240.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*79 Murphy J. Foster, III, Steven B. Loeb, John T. Andrishok, Yvonne Reed Olinde, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, for Plaintiff-Appellant State Machinery & Equipment Sales, Inc.
James P. Doré, Amy D. Berret, R. Benn Vincent, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, for Defendant-Appellee Iberville Parish Council.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
State Machinery & Equipment Sales, Inc. (State Machinery) appeals a judgment dismissing its Public Bid Law claims against the Iberville Parish Council (Iberville). For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
During February and March 2005, Iberville published advertisements soliciting bids for its proposed purchase of an excavator and wheel loader. Because the estimated cost of each piece of equipment exceeded $20,000, the bids were subject to the Louisiana Public Bid Law.[1] The bid opening date was specified as March 8, 2005; complete bid specifications were available at the Iberville purchasing department *80 in Plaquemine, Louisiana. State Machinery's business is construction equipment rentals and sales. It reviewed the bid specifications and submitted a timely bid on the two pieces of equipment. When the bids were opened, State Machinery was the lowest bidder on both items.[2]
However, on March 9, 2005, Iberville notified State Machinery in writing that both of its bids were being rejected. One of the specifications for both pieces of equipment was that the machine and engine be provided by the same manufacturer. Neither of the bids submitted by State Machinery met this specification. In addition, Iberville advised that the warranty for the excavator was not acceptable, and the wheel loader warranty was also insufficient, as there was no engine warranty attached to the bid. On March 15, 2005, State Machinery sent Iberville a formal protest of the disqualification of its bids, requesting a hearing on the matter. A meeting was held between the parties, at which some of the alleged deficiencies in the State Machinery bid were discussed. Iberville did not change its decision as a result of this meeting, and awarded the contract for both items to the next lowest responsive bidder, Scott Construction Equipment (Scott), whose bid using Volvo equipment met 100% of the bid specifications on both pieces of equipment.
State Machinery filed suit against Iberville on March 24, 2005, requesting preliminary, permanent, and mandatory injunctions, along with a writ of mandamus and, in the alternative, damages. The petition alleged that Iberville's disqualification of State Machinery's bids was in contravention of Louisiana's Public Bid Law. State Machinery alleged that the equipment described on its bid was the functional equivalent of the equipment in the bid specifications and, because it had submitted the lowest responsible and responsive bid, Louisiana law required that the contract be awarded to it. State Machinery also filed a motion for a preliminary injunction.
The parties stipulated that the May 5, 2005 hearing on the motion for a preliminary injunction would also serve as the trial of the request for a permanent injunction. Following that hearing, at which both sides called witnesses and submitted documentary evidence, the trial court ruled in favor of Iberville, finding it was not arbitrary and capricious and Identifying three objective reasons for Iberville's rejection of State Machinery's bids, namely: (1) the failure to include any warranty for the wheel loader engine; (2) the failure to comply with the "wet sleeve" engine design requirement in the excavator specifications; and (3) the failure to satisfy the requirement on both pieces of equipment that the engines and machines be manufactured by the same company. A judgment dismissing State Machinery's claims was signed on May 25, 2005, and this appeal followed.

APPLICABLE LAW
Injunction
An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided *81 by law. LSA-C.C.P. art. 3601(A). Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 04-1884 (La.App. 1st Cir.9/23/05), 916 So.2d 1156, 1163, writ denied, 05-2326 (La.3/17/06), 925 So.2d 541. A showing of irreparable harm is not required in cases where the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law. See Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597, 599. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270 (La.App. 1st Cir.3/24/05), 906 So.2d 660, 663.
A petitioner seeking a preliminary injunction is required to offer less proof than is necessary in an ordinary proceeding for a permanent injunction. See Derbes v. City of New Orleans, 05-1249 (La.App. 4th Cir.8/30/06), 941 So.2d 45, 53-54. The issuance of a permanent injunction takes place only after a trial on the merits, in which the burden of proof must be founded on a preponderance of the evidence. Hughes v. Muckelroy, 97-0618 (La.App. 1st Cir.9/23/97), 700 So.2d 995, 998. The manifest error standard is the appropriate standard of review for the issuance of a permanent injunction. Parish of East Feliciana ex rel. East Feliciana Parish Police Jury v. Guidry, 04-1197 (La.App. 1st Cir.8/10/05), 923 So.2d 45, 53, writ denied, 05-2288 (La.3/10/06), 925 So.2d 515.
It is unclear which burden of proof and which standard of review are applicable when the parties have agreed, as in this case, that the hearing on the motion for a preliminary injunction will also constitute the trial on the merits for a permanent injunction. In the matter before us, the parties agreed before the hearing that it would constitute the trial on the merits for a permanent injunction, and the trial court conducted the hearing accordingly, requiring the plaintiff to satisfy its burden of proof by a preponderance of the evidence. However, in the only case specifically discussing a consolidation of such hearings, the supreme court apparently approved the treatment of the proceeding as if it were a hearing on the motion for a preliminary injunction. In Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220 (La.4/14/04), 875 So.2d 22, 29, the court stated the following:
In this case, the parties agreed to a consolidation of the trial on the merits and the rule of the preliminary injunction. Under these circumstances, the permanent injunction is not a result of a trial on the merits, but is based on a prima facie showing by the plaintiff that he is entitled to a preliminary injunction. Given the stipulation in this case, the court of appeal determined the district court used the standard for granting a preliminary injunction, i.e. a prima facie showing, instead of a preponderance of the evidence standard. Thus, the court of appeal held the standard of review for the conclusions made by the district court based on its findings of fact were not subject to the higher burden of proof and, therefore, should not be subject to the higher standard of review. We agree and engage in a de novo review of *82 the court of appeal's granting of the permanent injunction. . . .
In the footnote appended to this paragraph, the supreme court noted:
FN2. Moreover, we denied the [plaintiffs'] writ application in which the [plaintiffs] raised as their sole assignment of error the appellate court's use of the de novo standard of review. See Mary Moe, L.L.C., et al. v. Louisiana Board of Ethics, 03-2200 (La.11/26/03), 860 So.2d 1133.
The fourth circuit's opinion is unpublished,[3] and the quoted footnote from the Moe case does not explain what justified the appellate court's use of a de novo review.
In light of these apparent anomalies, and in an effort to clarify the supreme court's discussion of these procedural matters, this court obtained a copy of the unpublished opinion of the fourth circuit. In that case, the trial court issued a temporary restraining order and held a hearing on the plaintiffs' motion for a preliminary injunction. At the conclusion of that hearing, in which the trial court had required the plaintiffs to establish only a prima facie showing of their entitlement to relief, the court noted its intention to grant the preliminary injunction. At that point, the parties stipulated that they would waive their right to a trial on the merits and consent to the entry of a final judgment and a permanent, rather than a preliminary, injunction, based on the hearing that had already occurred. Therefore, the parties in the Moe case agreed to accept the trial court's ruling on the preliminary injunction as the final judgment on the request for a permanent injunction. This contrasts to the situation before us, in which the parties' consent was obtained before the hearing, and the hearing was conducted as a full trial on the merits of the permanent injunction.
In addition, the fourth circuit recognized that the proper standard of review for the issuance of a permanent injunction is the manifest error standard, because the issuance of a permanent injunction generally takes place only after a trial on the merits, in which the burden of proof must be founded on a preponderance of the evidence. However, under the unique circumstances of that case, in which the trial court granted the preliminary and permanent injunction based on only a prima facie showing, the fourth circuit stated that it would apply the manifest error review only to the findings of fact, and that the trial court's conclusions of law based on those findings would be reviewed de novo.
Given the unusual procedural background underlying the fourth circuit's application of the prima facie burden of proof and the de novo standard of review, we believe the supreme court's statements on these issues are inapplicable to the situation before us. In this case, a full trial on the merits was held and the burden of proof to which the plaintiff was held was the preponderance of the evidence standard, which is the appropriate standard for the request for permanent injunctive relief. Accordingly, our review is of a trial on the merits of the request for a permanent injunction. Therefore, the manifest error standard of review is appropriate in this case.
Public Bid Law
This case is governed by the provisions of the Louisiana Public Bid Law, Louisiana Revised Statutes 38:2211 *83 through 2226. Louisiana's Public Bid Law is a prohibitory law founded on public policy. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth., 04-0211 (La.3/18/04), 867 So.2d 651, 656. The statute was enacted in the interest of the taxpaying citizens for the purpose of protecting them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. A political entity has no authority to take any action which is inconsistent with the Public Bid Law. Id.; Louisiana Associated Gen. Contractors, Inc. v. Louisiana Dep't of Agric. & Forestry, 05-0131 (La.2/22/06), 924 So.2d 90, 95.
This case does not involve a "public work," as that term is defined in LSA-R.S. 38:2211(A)(12), because it does not deal with the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. Therefore, the provisions of LSA-R.S. 38:2212 do not apply to the bidding process and contract at issue in this appeal, because that statute applies only to "[a]ll public work exceeding the contract limit as defined in this Section."[4] However, it does involve a "public contract," as that term is defined in LSA-R.S. 38:2211(A)(10), because it is a contract awarded by a public entity for the purchase of materials or supplies. As such, the bidding process and contract in this case are governed by the provisions of LSA-R.S. 38:2212.1.[5]
Under its provisions, all purchases of materials or supplies exceeding the sum of twenty thousand dollars to be paid out of public funds must be advertised and awarded by contract to the lowest responsible bidder who has bid according to the specifications as advertised. LSA-R.S. 38:2212.1(A)(1)(a). The opening of such bids is governed by the provisions of LSA-R.S. 38:2214. LSA-R.S. 38:2212.1(J). A public entity may reject any and all bids for just cause. LSA-R.S. 38:2214(B). The statute defines certain situations that constitute "just cause," but the definition is not limited to those circumstances. LSA-R.S. 38:2214(B); Barriere Const. Co., LLC v. Terrebonne Parish Consol. Gov't, 99-2271 (La.App. 1st Cir.2/18/00), 754 So.2d 1123, 1126, writ denied, 00-0801 (La.5/5/00), 761 So.2d 546. The proper *84 interpretation of the statute is that the public entity must have just cause to reject any bid and, likewise, it must have just cause to reject all bids. This requires that the public entity have a just, reasonable basis for rejecting a bid, yet it does not dictate that it must reject bids on every occasion where such a reason is found to exist. New Orleans Rosenbush Claims Serv., Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538, 545.
When a public entity uses public funds to purchase materials or supplies in a manner that is contrary to the provisions of the Public Bid Law, the contract is null and void. LSA-R.S. 38:2220(A); see Louisiana Associated Gen. Contractors, Inc. v. Calcasieu Parish Sch. Bd., 586 So.2d 1354, 1362 n. 14 (La.1991). The failure to award the contract to the lowest responsive and responsible bidder is a violation of the Public Bid Law. See Ray Anding Const., Inc. v. Monroe City Sch. Bd., 38,228 (La.App. 2nd Cir.3/5/04), 867 So.2d 1005, 1007. Under the provisions of the Public Bid Law, a public entity is required to award a public contract to the "lowest responsible bidder"; however, this does not mean that the public entity is required to accept the lowest monetary bid. Louisiana Associated Gen. Contractors, Inc., 586 So.2d at 1362.
Any interested party may bring suit through a summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract that would be in violation of the Public Bid Law. LSA-R.S. 38:2220(B) and 2220.1. If an aggrieved bidder on a public contract has timely filed suit for injunctive relief, but injunctive relief is no longer available, the bidder may recover damages against the public entity. The question of whether the contract was properly awarded is not rendered moot by the fact that injunctive relief is no longer available. See State Mach. and Equip. Sales, Inc. v. Livingston Parish Gravity Drainage Dist. # 5, 00-2066 (La.App. 1st Cir.11/14/01), 818 So.2d 133, 137.

ANALYSIS
State Machinery's first assignment of error is that the trial court erred in requiring it to establish by a preponderance of the evidence that Iberville's rejection of its bids was arbitrary and capricious. As noted in our discussion of the Moe case, it appears the supreme court approved the use of the prima facie burden of proof when the parties agreed after the hearing on the motion for a preliminary injunction to accept the court's decision as a final judgment on the request for a permanent injunction. In contrast, the parties in this case agreed before the hearing that it would serve as a full trial on the merits, and the trial court conducted the hearing pursuant to that stipulation, including the requirement that State Machinery satisfy the more exacting preponderance of the evidence burden of proof. Under this situation, the trial court did not err in applying that burden of proof, and this court will review the judgment using the manifest error standard of review.
State Machinery argues that because it had submitted the "lowest responsible bids," the burden of proof shifted to Iberville to establish "just cause" for rejecting its bids. However, none of the cases cited by State Machinery[6] support a *85 shift in the burden of proof solely on that basis, but merely reiterate the statutory requirement in Section 2214(B) that the public entity must have just cause to reject any or all bids. Whether seeking preliminary or permanent injunctive relief, it is the plaintiff who bears the ultimate burden of proof. Accordingly, we reject State Machinery's contention that the trial court erred in failing to shift the burden of proof to Iberville under the facts of this case.[7]
To establish its entitlement to injunctive relief, the aggrieved bidder must show that in addition to submitting the lowest monetary bid, it bid according to the specifications as advertised. According to the clear language of LSA-R.S. 38:2212.1(A)(1)(a), simply submitting the lowest monetary bid will not demonstrate entitlement to an award of the contract; the statute requires that the contract be awarded "to the lowest responsible bidder who has bid according to the specifications as advertised. . . ." (Emphasis added). It follows that if a bid deviates from the specifications as advertised, the aggrieved bidder who seeks injunctive relief must explain those deviations and satisfy the court that such differences are insignificant, pretextual, or insubstantial, and thus could not constitute "just cause" for rejection of the bid.
Having addressed these initial procedural issues, we turn our attention to the arguments on the substantive issues, all of which ultimately involve whether State Machinery's equipment was the functional equivalent of the bid specifications and whether Iberville had "just cause" to reject State Machinery's bids. At the outset, we note that the bid specifications on both pieces of equipment stated in unambiguous terms that the engine manufacturer must be the same as the machine manufacturer. The bids submitted by State Machinery consisted of Hyundai machines with Cummins engines  an obvious deviation from that specification. Therefore, State Machinery had to show by a preponderance of the evidence that this was not a significant or substantive deviation, such that rejection of its bid for this reason (among others) was not "just cause," but was arbitrary and capricious.
Edward L. Renton, State Machinery's president, testified that both of its bids included Hyundai machines with Cummins engines. Although its bids did not meet all of the specifications, each deviation was explained in the bid documents. During the post-bid meeting with Iberville, there was no discussion concerning the fact that its bids did not meet the "same manufacturer" requirement. Rather, the discussion focused on a comparison of the scope of the warranties provided by State Machinery to those offered by Scott on its bids; Scott's warranty covered a longer period of time. Renton pointed out that the specifications on the excavator did not even mention a warranty requirement. Despite this omission in the bid specifications, State Machinery's bid did state the scope of its warranty for the Hyundai machine; it did not provide any warranty information on the Cummins engine. On the wheel loader, State Machinery provided a copy of the machine warranty, but did not attach a warranty or provide any warranty information concerning the engine. The bid specifications did not say what period of time had to be covered by the wheel loader warranty. Renton said he offered to provide additional information *86 concerning warranties, but Iberville would not accept it.
Renton recalled that the Iberville representatives agreed that all of the machines, including those on State Machinery's bid, could do the work required by Iberville. He said there was also some discussion about whether State Machinery could provide parts and service for both the machine and the engine. Renton acknowledged that the bid specifications did not name a particular make of equipment, but that the engine and machine manufacturer must be the same. He said that all of the equipment provided by any manufacturer included component parts made by other manufacturers, and opined that as long as the equipment fit the specifications of horsepower, operating weight, size class of machine, etc., they were all functionally equivalent. Renton said that only Volvo could meet the specification that the engine and machine manufacturer be the same for these pieces of equipment.
Todd Urby, who handled heavy equipment sales for State Machinery, also testified. He said that in addition to the Volvo equipment that Scott bid, John Deere also makes the machines and engines for their excavators and wheel loaders. So John Deere equipment would also meet the specification of having the same manufacturer on the machine and engine. However, he reiterated Renton's testimony that when they met with the Iberville representatives to discuss the rejection of State Machinery's bid, the only discussion concerned the warranty situation.
Randall Dunn, Iberville's director of finance, stated that one of his duties includes the preparation of bids and specifications for Iberville when it needs to make a purchase. He said that when he develops the specifications, he has to rely on the equipment operators and mechanics to look at the machinery and describe the features that would meet their needs for operation and maintenance. On this particular bidding process, the mechanics specified that the machine and engine should be from the same manufacturer, primarily because of warranty considerations. The mechanics found separate warranties confusing. Also, when different parts of a piece of equipment had different warranties, the mechanics could not always get service for that equipment at one location. So this requirement was of particular importance to them. Dunn explained:
[W]hen you're dealing with one  more than one warranty, warranty on an engine, warranty on a piece of machinery, nine times out of ten, you have to go with a separate service. You have to have the engine serviced at one location and the machine serviced at another location.
* * *
So, we want to have the engine manufacturer the same as the machine manufacturer, just as if you were buying a car. Ford, Ford engine; Chevy, Chevy engine. It goes to . . . one place to be fixed.
As a financial officer, Dunn did not have expertise in heavy construction equipment, so all of the specifications he included in the bids, including such things as "wet sleeve" design and outboard brakes, were the result of recommendations made by the mechanics for their ease in repairing and servicing the equipment over the course of the many years it would be in use. He also said that after reviewing those recommendations and developing the preliminary bid specifications, he went to the internet to be sure there were manufacturers who could meet those criteria. He denied using the Volvo specifications to develop the bid requirements, reiterating *87 that those criteria were put together in his office when he interviewed the mechanics to determine what should be included to meet their needs. Dunn also noted that for the wheel loader, Crawler Supply Company's bid, although high, was for Case equipment that had the engine and machine manufactured by the same company.[8]
With reference to the warranty information submitted by State Machinery, as compared to the other bidders, Dunn said that all the other bidders included warranty documentation on both the engines and the machines, even if those were made by different manufacturers. When the warranty information was reviewed, the Scott warranty covered twelve months from the first date of service or 2500 hours, whichever came first. State Machinery's warranty said 360 days and 1500 hours, whichever came first. Although no minimum warranty term was specified in the bids, Iberville preferred the longer warranty. He said Iberville could not allow State Machinery to supplement its bid with additional warranty information after the bids were opened, as this would have been a violation of the Public Bid Law. Dunn said that the meeting with Renton and Urby concerning the rejection of State Machinery's bids was cut short by Renton, who left abruptly before some of the other bid deficiencies could be discussed.
During the trial, the court analogized State Machinery's claims to a situation in which a bid specification stated that the construction equipment had to be green, and only one manufacturer made green equipment. Such a specification would be closed to all other bidders on the basis of meaningless criteria, and the awarding of a bid based on such a limitation would be without just cause, arbitrary, and capricious. State Machinery argues that the specifications for the excavator and wheel loader in this case could only be met by Volvo, and thus, even though the bid specifications did not state a manufacturer by name, the effect was the same as a closed specification bid. In Louisiana Associated Gen. Contractors, Inc., 586 So.2d at 1364, the supreme court stated that LSA-R.S. 38:2290, commonly referred to as the "Closed Specification Statute," supplements the low bidder statute. It provides, in pertinent part:
A. No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building or except in those cases where a particular material is required to preserve the historical integrity of the building or the uniform appearance of an existing structure.
B. A closed specification shall not be submitted or authorized when any person or group of persons possess the right to exclusive distribution of the specified product, unless the product is required to expand or extend an existing system presently operating at the facility or site.
State Machinery's argument is also based, in part, on LSA-R.S. 38:2212.1(C), which allows a public entity to specify a particular brand, make, or manufacturer in the specifications when technical equipment, apparatus, machinery, materials, or supplies of a certain type are clearly in the public interest. LSA-R.S. 38:2212.1(C)(1). In such a case, the specifications must also state clearly that they are used only to *88 denote the quality standard of the product desired and do not restrict bidders to that specific brand, make, manufacturer, or specification named. Such bid specifications must also state that equivalent products will be acceptable. LSA-R.S. 38:2212.1(C)(2).
This court agreed with similar arguments by State Machinery and ruled in its favor in State Mach. & Equip. Sales, Inc. v. Livingston Parish Gravity Drainage No. 5, 98-1207 (La.App. 1st Cir.6/25/99), 742 So.2d 26. In that case, the evidence established that the bid specifications tracked one manufacturer's product description to such an extent that, although no brand name was specified, the criteria were so limited that the effect was that of a closed specification bid. For that reason, only one manufacturer's product could and did meet the bid specifications, and State Machinery's lower monetary bid was rejected by the public entity. Under these circumstances, this court said:
We conclude, based upon the evidence presented and the testimony adduced at trial, that in addition to being the lowest bid received, the State Machinery bid was also the lowest responsible bid. Accordingly, we hold that the drainage district lacked "just cause" and was arbitrary and capricious in its rejection of State Machinery's bid proposal.
State Machinery, 742 So.2d at 33-34.
However, unlike that situation, the evidence in this case did not establish that the Volvo equipment was the only type that could meet the bid specifications, nor was any particular manufacturer's name specified. For this reason, the Iberville bid specifications did not constitute a closed bid. Moreover, while State Machinery's equipment may have been able to perform the basic functions for which it was being purchased, there were other reasonable objectives for this equipment involving ease of repair and the ability to service both the engine and machine at one place under a single warranty. These additional criteria were not meaningless, but were important to the operators and mechanics who would be using and repairing the equipment on a daily basis for many years. Thus, in those respects, the State Machinery equipment was not the "functional equivalent" of the equipment described in the Iberville bid specifications. We find no manifest error in the trial court's findings on this matter, and conclude that on this basis alone, Iberville had "just cause" to reject the State Machinery bid.[9] We agree with the trial court, therefore, that State Machinery failed to establish by a preponderance of the evidence that it was the lowest responsible bidder who bid according to the specifications as advertised, such that the rejection of its bid was arbitrary and capricious.

CONCLUSION
Based on the foregoing, we affirm the judgment of May 25, 2005, dismissing State Machinery's claims against Iberville. All costs of this appeal are assessed against State Machinery.
AFFIRMED.
NOTES
[1] LSA-R.S. 38:2211 through 2226. The $20,000 threshold applicable to this case is provided by LSA-R.S. 38:2212.1(A)(1)(a).
[2] CLM Equipment Company submitted alternative bids on the excavator, one for $155,747  the lowest bid  and one for $180,215  the highest bid. It also bid $98,175 on the wheel loader. However, all of its bids were disqualified for various reasons. The other bidders on the excavator were Scott Construction Equipment, with a bid of $169,990, and State Machinery, with the low bid of $164,489. On the wheel loader, Crawler Supply Company, Inc. bid $104,829, Scott Construction Equipment bid $99,990, and State Machinery bid $84,176.
[3] Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 02-2135 (La.App. 4th Cir.6/4/03) (unpublished opinion).
[4] The contract limit is defined in sub-paragraph (A)(1)(d) as "equal to the sum of one hundred thousand dollars per project, including labor, materials, and equipment. . . ." Although the total purchase price involved in this contract exceeded one hundred thousand dollars, the project did not involve a public facility or immovable property, and therefore, was not a "public work" contract subject to Section 2212.
[5] The delineation of two types of public contracts, as defined in LSA-R.S. 38:2211(A)(10), is also apparent in LSA-R.S. 38:2220 and 2220.1, both of which emphasize that there are two distinct types of contracts covered by the Public Bid Law, namely, any purchase of materials or supplies or any contract entered into for the construction of public works. Before 1999, the two types of public contracts were both covered in LSA-R.S. 38:2212; they were separated by 1999 La. Acts, No. 768, § 1, which deleted from Section 2212 the references to purchases of materials or supplies and re-designated those provisions as Section 2212.1. We note this distinction, because it is not clear from the jurisprudence that the difference between the two types of contracts has been consistently observed. Most of the cases concerning the provisions of the Public Bid Law describe the contracts at issue as involving "public work," and therefore, the non-waiver restrictions of sub-paragraph (A)(1)(b) and other technical requirements of LSA-R.S. 38:2212 are often invoked by the courts. See, e.g., Hamp's Const., L.L.C. v. City of New Orleans, 05-0489 (La.2/22/06), 924 So.2d 104. However, those provisions are not applicable to this case. Therefore, any reference to such "public work" jurisprudence in this opinion will be to illustrate principles common to both types of public contracts.
[6] River/Road Const., Inc. v. City of New Orleans, 95-1782 (La.App. 4th Cir.1/11/96), 667 So.2d 1166, rev'd on other grounds, 96-0348 (La.3/15/96), 669 So.2d 437; New Orleans Rosenbush Claims Ser., Inc., 653 So.2d 538; Barber Bros. Contracting Co., Inc. v. Dep't of Transp. & Dev., 529 So.2d 442 (La.App. 1st Cir.), rev'd, 533 So.2d 1226 (La.1988).
[7] In addition, as this opinion will discuss, we agree with the trial court that Iberville fully explained its objective, non-pretextual reasons for rejecting State Machinery's bids, and that these reasons constituted "just cause" for its decision in this case. Therefore, even if there were such a burden of production on Iberville, Iberville's evidence met that burden.
[8] That bid also stated that it met 100% of the bid specifications for the wheel loader. Crawler Supply did not bid on the excavator.
[9] Accordingly, we pretermit discussion of the "wet sleeve" specification and the wheel loader engine warranty.