NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0102

JODI PROPERTIES, LLC

VERSUS

TITUS COCHRAN AND PHYLLIS COCHRAN

Judgment Rendered: _____NOV 1 5 2019_____

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 2014-0002878

Honorable Robert H. Morrison, III, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Frank W. Lagarde, Jr.
Metairie, LA

Counsel for Plaintiff/Appellee,
Jodi Properties, LLC

Douglas D. Brown
Hammond, LA

Counsel for Defendants/Appellants,
Titus Cochran and Phyllis Cochran

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.

**WHIPPLE, C.J.**

This matter is before us on appeal by defendants, Titus and Phyllis Cochran, from a judgment of the trial court granting a permanent injunction in favor of plaintiff, Jodi Properties, LLC. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Jodi Properties, LLC, owns a tract of property on La. Hwy. 40 in Folsom, which it uses for business purposes, including leasing the property to various third parties for use as a granite yard and as a parking lot for trucks, tractor-trailers, and heavy equipment. Titus Cochran and his wife, Phyllis Cochran, own an adjacent tract of property on La. Hwy. 40, upon which they built a home and reside.[1]

On September 26, 2014, Jodi Properties, LLC (hereinafter "plaintiff") filed a petition for preliminary and permanent injunction against the Cochrans (hereinafter "defendants"), contending that the defendants' property was situated below their property, and that the defendants had obstructed the flow of natural drainage from their estate, in violation of LSA-C.C. art. 655, causing plaintiff and their tenants irreparable injury, loss, and damage. Following a hearing on the preliminary injunction, the trial court issued reasons for judgment, concluding that plaintiff's property is the dominant estate and that the natural flow of water ran across defendants' property. The court further noted that plaintiff was able to utilize its property for some time without any drainage hindrance until the defendants erected a structure on their property, which blocked the flow of natural drainage and caused water to pond or accumulate on plaintiff's property at various times. The trial court considered the defendants' construction of a residence on their property and determined that the problem could be remedied by the defendants placing a culvert of sufficient size and drainage ditch of sufficient depth and width over

---

[1] The Cochrans and Jodi Properties, LLC purchased Lots 5 and 6, respectively, from the partition of the Casie J. Populis estate. Each lot consists of approximately thirteen acres.

2

portions of their property not involving the house location such that the flow of water draining across from plaintiff's property would not be impeded. In accordance with its reasons, the trial court signed an order on November 12, 2014, granting plaintiff's motion for preliminary injunction and ordering the defendants to either remove the current impediments erected on their property, so as to restore the natural flow of water from plaintiff's property, or to construct an alternate drainage relief system over their property, such that the amount of flow of natural drainage from plaintiff's property was restored to its prior level.[2]

None of the remedial actions ordered by the trial court were undertaken by the defendants; thus, plaintiff filed a motion to set its request for permanent injunction for trial, a rule for entry upon the defendants' land in order for an elevation survey and measurements to be taken on the defendants' property, and a rule for contempt. Following a hearing, the trial court granted plaintiff's rule for contempt, citing the defendants' failure and/or refusal to take any remedial action to prevent flooding to plaintiff's property, and granted plaintiff's requested order for entry upon the defendants' land.

The motion for permanent injunction was subsequently heard over the course of two days on December 5, 2016, and May 1, 2017. After taking the matter under advisement, the trial court issued reasons for judgment on October 26, 2017, finding that plaintiff established that the defendants' actions impeded the flow of natural drainage, and that it would issue a permanent injunction ordering the defendants to cease this impediment. A judgment granting a permanent injunction was ultimately signed by the trial court on September 19, 2018, which

---

[2]The defendants filed an appeal and writ application with a request for stay seeking review of the trial court's November 12, 2014 order. The writ and stay were denied by this court. See Jodi Properties, LLC v. Titus Cochran and Phyllis Cochran, 2015-0625 (La. App. 1st Cir. 4/23/15)(unpublished). This court subsequently dismissed the defendants' appeal as untimely and denied a request by plaintiff for sanctions and attorney's fees pursuant to LSA-C.C.P. art. 863. See Jodi Properties, LLC v. Titus Cochran and Phyllis Cochran, 2015-1327 (La. App. 1st Cir. 6/3/16)(unpublished).

ordered that defendants were permanently enjoined from impeding the natural drainage of water from the dominant estate, owned by plaintiff, to the servient estate, owned by the defendants. The judgment further ordered defendants to take any remedial action necessary to prevent the impediment of the natural flow of water from the dominant estate to the servient estate, recognized plaintiff's right to bring a second rule for sanctions, and taxed the defendants with all costs.

The defendants then filed the instant suspensive appeal, contending that the trial court was manifestly erroneous in permanently enjoining their efforts to stop recent flooding of their property by plaintiff and in ordering remedial actions to allow the flooding to continue unimpeded.

## DISCUSSION

An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. LSA-C.C.P. art. 3601(A). The issuance of a permanent injunction takes place only after a trial on the merits, in which the burden of proof must be founded on a preponderance of the evidence. State Machinery & Equipment Sales, Inc. v. Iberville Parish Council, 2005-2240 (La. App. 1st Cir. 12/28/06), 952 So. 2d 77, 81.

The standard of review for the issuance of a permanent injunction is the manifest error standard. Cathcart v. Magruder, 2006-0986, 2006-0987, 2006-0988 (La. App. 1st Cir. 5/4/07), 960 So. 2d 1032, 1041. Under this standard, in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding, and that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So. 2d 880, 882 (La. 1993). Thus, if the trial court's findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as trier of fact, it would have

4

weighed the evidence differently. Stobart v. State, Department of Transportation and Development, 617 So. 2d at 882.

Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So. 2d at 882. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So. 2d at 883.

The record reflects that defendants initially purchased the property on January 14, 1999, sold it to their daughter, Lataisha Ann Tate, on April 28, 2003, then purchased the property back from their daughter on November 22, 2004. The defendants began constructing their house and driveway, which runs parallel to plaintiff's fence and then curves in toward the house, in 2005. Mr. Cochran testified that in 2011, he began having problems with water coming across his driveway from plaintiff's property, which washed his driveway out and flooded his property. Mr. Cochran testified that plaintiff built a road on the back of its property and built a pond on the rear of its property, using the dirt from the pond to fill in the front of its property. Mr. Cochran testified that they first began having flooding issues when plaintiff began making these improvements to its property. He testified that prior to that, he was able to cut the grass on his property and did not have standing water around his home. Mr. Cochran testified that in an attempt to alleviate the flooding, he asked the Parish of Tangipahoa to drop off dirt, which he leveled on the side of his property and curved around his driveway to try to

5

block water that was coming in from plaintiff's property. He stated, however, that despite creating a berm with the dirt, water was still coming across his property from plaintiff's property. Mr. Cochran testified that at one point, he put asphalt on his driveway because the water coming across from plaintiff's property kept washing his driveway out.

Phyllis Cochran testified that the water from plaintiff's property continues to flood their property, which required them to rebuild their driveway three to five times. She stated that they have never raised their driveway, but have added gravel several times. She testified that one time they added asphalt, but the water has since washed the asphalt away. Mrs. Cochran further testified that the dirt berm between their driveway and fence adjacent to plaintiff's property is only slightly higher than the driveway. She stated that despite building the berm, the water still comes over the berm and floods their property. Mrs. Cochran testified that due to the standing water on her property, she is unable to entertain or invite guests over, her grandchild cannot play in the yard because the swing set and trampoline are under water, and the U.S. Postal Service and UPS are not able to access her driveway to deliver mail or packages.

Joseph Pieri, Jr. and his sister, Dina Pieri Chevalier, own Jodi Properties, LLC, and purchased the property adjacent to the defendants' property on December 19, 2003. Mr. Pieri testified that in 2005, he constructed a parking lot on the front portion of the property by removing twelve to twenty-four inches of the topsoil, then replacing it with red clay brought from the rear of the property where he was constructing a pond. Mr. Pieri testified that he then added an inch of limestone on top of the clay, but stated that the water permeates the limestone. He testified that by adding red clay, he did not raise the height of the land, but merely filled in where the topsoil had been excavated. Mr. Pieri further stated that he cleared a road to the back of his property in order for dump trucks to access the

6

pond and transport the dirt to the front of the property, but denied that the road added to the elevation of that area. Mr. Pieri testified that he installed culverts underneath the road so it would not impede the flow of water.

Mr. Pieri explained that he began noticing water on his property after the defendants added dirt to elevate the spot where they built their house and after their driveway was constructed. He testified that the water drained from west to east, or from his property across the defendants' property, and that it was a wide area of water that would drain quickly. Mr. Pieri further testified, however, that the situation was getting progressively worse, and that after the defendants brought in dirt and constructed a berm along his property line, the construction caused the water to back up onto his property, rendering 70 percent of his property unusable. Mr. Pieri testified that before the defendants built the berm, he never had problems and could mow the entire area on a weekly basis. Mr. Pieri identified photographs of the standing water on his property, including photographs of three trees that had died due to the flooding situation created by the berm. Mr. Pieri stated that the water does not stand on the front portion of his property, but the back portion of the property has standing water and is inaccessible by vehicles or equipment. He testified that he leases that portion of the property for hunting because it is only accessible by foot. Mr. Pieri testified that he used to be able to rent more parking spaces to truckers on the front portion of his property, but now the soil is so soft from the water that the trucks won't stand up on it.

Ms. Chevalier testified that she handled leasing the property to third party businesses, but was no longer able to lease the property due to the "water issue." She testified that a previous tenant, who operated a granite and marble wholesale company, wanted to expand, but when plaintiff was unable to accommodate the expansion due to water backing up from defendants' property and flooding their property, the tenant left. Ms. Chevalier stated that businesses that typically leased

from them were unable to operate heavy equipment or forklifts on the property, because they would sink into the ground. She testified that they had not had a tenant on the property since the last written agreement with a tenant ended in 2012, and that the property was not rentable in its current state. Ms. Chevalier testified that Mr. Pieri has allowed eighteen-wheeler trucks to park on the front portion of the property from time to time.

Bruce M. Butler, III, a licensed land surveyor, testified as an expert in the field of land surveying. Mr. Butler, who was retained by plaintiff, performed an elevation survey of plaintiff and defendants' respective property on June 29, 2015. Mr. Butler testified that the water normally flows across these properties from west to east, or from plaintiff's property onto defendants' property. The elevation survey denoted standing water on the rear and side of plaintiff's property on the west side of the berm on defendants' property. Mr. Butler testified that although his crew was unable to measure the depth of the standing water because they would have had to wade through it, he determined that the berm was higher than the land beneath the water on plaintiff's property because the berm was dry and the land was holding water. According to Mr. Butler, the berm constructed by defendants was higher in elevation than the driveway it ran along side of and was also higher than the land in front of the defendants' house.

Maurice Jordan, the parish engineer for Tangipahoa Parish Government, who was accepted by the court as an expert in civil engineering, testified that he visited the defendants' property with parish council member Greg Varnado after the defendants contacted Mr. Varnado with a complaint about standing water around their home. Mr. Jordan stated that on that visit, he advised the defendants that based on the lack of cross-drains and culverts under plaintiff's road, combined with the berm that defendants built, the drainage had been altered and "not in a good way." Mr. Jordan testified that given these alterations, he was unable to

determine the natural flow of drainage. Following Mr. Jordan's visit, he sent the defendants a letter summarizing his observations, stating:

> This is a summary of Councilman Varnado's and my visit to your property on 04/09/15. It was very obvious that you and your neighbor have a serious drainage problem. It was observed that you had piled material along and inside your west property line and water from your neighbors [sic] property was backed up against this material. Also as far as we could tell your neighbor had constructed a road going north and south approximately in the center of his property. It appears that this road does not have a culvert across it which would prevent drainage to the west. The combination of this road and the piles of soil has created a wetlands/lake affect.
>
> In studying a Topo map of the area it is difficult to determine how the drainage should work. However, it is my opinion that before there was any development or build up of elevation that the drainage probably went in more than one direction from these properties. If the road on your neighbor's property had cross-drain culverts and you removed the piles of soil the drainage issue would probably improve.
>
> The water that is backed up against the piles of soil on your property is slowly perking through and keeping your yard saturated. After walking the area no definitive natural drain was seen.
>
> I know this does not offer a definite solution but maybe it will give some direction.

Mr. Jordan conceded that although the road on plaintiff's property did not appear to have culverts installed beneath it, if Mr. Pieri testified that there were culverts beneath the road, he had no reason to dispute it.

Tangipahoa Parish Council Member James Bailey testified that he was aware of complaints about standing water and drainage issues in the area at issue herein. Mr. Bailey testified that he has lived in this area for sixty-one years and was of the opinion that the water naturally drained from east to west into a catch basin at the northeast corner of Hwy. 445 and Hwy. 40. He stated that the water then drains under Hwy. 445 to Mineral Lake and Zemurray Park, then from Mineral Lake to Chapatula Creek. Mr. Bailey did not agree that it was possible for the water to flow from west to east based on the topographic maps that he has seen. He testified that he agreed that the berm built on defendants' property was going to stop the water, but that the water should have been to the west toward the catch basin.

9

Louisiana Civil Code article 655 provides that "[a]n estate situated below is the servient estate and is bound to receive the surface waters that flow naturally from a dominant estate situated above unless an act of man has created the flow." Louisiana Civil Code article 656 further provides that "[t]he owner of the servient estate situated below may not do anything to prevent the flow of the water" and that "[t]he owner of the dominant estate situated above may not do anything to render the servitude more burdensome."

In attempting to justify their construction of the berm, the defendants argue that the trial court erred in failing to recognize that the water flow from plaintiff's property to the defendants' property increased only after plaintiff altered the land significantly by "land clearing, excavation, and earth works," until it actually flooded the defendants' property. The defendants contend that in constructing a parking lot and road on its property, plaintiff increased the flow of water to the defendants' property, which rendered the natural servitude of drainage more burdensome, thereby requiring the defendants to take justified remedial measures, such as adding dirt to their property to prevent such flooding.

After hearing the conflicting testimony adduced at trial, the trial court rendered reasons for judgment, reiterating its previous findings in support of its grant of preliminary injunctive relief and further finding that plaintiff's construction of an access road to the rear of its property did not serve to render the natural servitude of drainage more burdensome to the defendants, where aerial photographs showed standing water on both sides of this road. The trial court noted that the fact that water did not extend from the road to any point close to the defendants' property belied the defendants' contention that the road has impeded the flow of water off of defendants' land.

After a thorough review of the record and documentary evidence, photographs, plats, drone video footage, and conflicting lay and expert testimony

10

presented herein, we find that a reasonable basis exists for the trial court's determination that plaintiff established by a preponderance of the evidence that it was entitled to a permanent injunction to enjoin defendants from impeding the natural drainage of water from the dominant estate to the servient estate. We are mindful that on review, the fact finder's choice between the two permissible views of the evidence cannot be manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So. 2d at 883.

The evidence and testimony presented establish that the "piles of dirt" or berm built by the defendants prevent, or otherwise alter, the flow of the water from the dominant estate to the servient estate. See LSA-C.C. arts. 655 and 656. Although defendants testified that plaintiff's improvements on its property rendered its natural servitude of drainage more burdensome, the plaintiff presented evidence to the contrary, including Mr. Pieri's testimony and photographs of the plaintiff's property, which the trial court found more persuasive. That reasonable evaluation of the evidence is entitled to great deference on appeal and will not be disturbed. While we sympathize with the defendants' predicament, we note that alternative measures are available, such as the remedial actions outlined by the trial court, to attempt to improve the drainage situation.

Accordingly, the judgment of the trial court granting plaintiff's petition for permanent injunction must be affirmed.

## CONCLUSION

For the above and foregoing reasons, the September 19, 2018 judgment of the trial court is hereby affirmed. Costs of this appeal are assessed to defendants/appellants, Titus and Phyllis Cochran.

**AFFIRMED.**

11